**UNITED STATES of America, Plaintiff,**

v.

**Timothy James McVEIGH and Terry Lynn Nichols, Defendants.**

**Criminal Action No. 96–CR–68–M.**

United States District Court,
D. Colorado.

Sept. 9, 1996.

Patrick M. Ryan, U.S. Attorney for the Western District of Oklahoma, Oklahoma City, OK, Joseph Hartzler, Special Assistant U.S. Attorney, Assigned from S.D. Illinois, Denver, CO, for plaintiff.

Stephen Jones, Richard H. Burr, III, Robert Nigh, Jr., Jones, Wyatt & Roberts, Enid, OK, Jeralyn E. Merritt, Denver, CO, for defendant McVeigh.

Michael Tigar, Ronald G. Woods, N. Reid Neureiter, Denver, CO, for defendant Nichols.

## MEMORANDUM OPINION AND ORDER

MATSCH, Chief Judge.

This memorandum opinion determines the issues raised and discussed in the following pleadings:

Docket entry 379 Motion to Dismiss Counts One and Two for Failure to State an Offense and Incorporated Memo of Points and Authorities; Oral Argument Requested [filed by Nichols]

Docket entry 380 Motion to Dismiss Counts One and Two for Unconstitutionality of 18 U.S.C. § 2332a, subsection 2—Commerce Clause and Incorporated Memo of Points and Authorities; Oral Argument Requested [filed by Nichols]

Docket entry 381 Motion to Dismiss Count One—Multiple Conspiracies—and Incorporated Memorandum of Points and Authorities; Oral Argument Requested [filed by Nichols]

Docket entry 382 Motion to Dismiss Counts One, Two and Three because 18 U.S.C. § 2332a and 18 U.S.C. § 844(f) Violate the Eighth Amendment and Incorporated Memorandum of Points and Authorities; Oral Argument Requested [filed by Nichols]

Docket entry 383 Motion to Dismiss Count Three for Failure to State an Offense—Vagueness Regarding Intent Element—and Incorporated Memorandum of Points and Authorities; Oral Argument Requested [filed by Nichols]

Docket entry 384 Motion to Dismiss Counts Four through Eleven for Violation of Federal Rules of Criminal Procedure 7 and 8 and Incorporated Memorandum of Points and Authorities; Oral Argument Requested [filed by Nichols]

Docket entry 386 McVeigh's Motion for Oral Argument for Challenges to the Face of the Indictment and Brief in Support

Docket entry 387 McVeigh's Motion to Dismiss Count One of the Indictment, or Alternatively to Strike Surplusage and Incorporated Brief in Support

Docket entry 388 McVeigh's Motion to Strike Surplusage and Brief in Support

Docket entry 390 McVeigh's Motion to Consolidate Counts Two and Three and Motion to Dismiss Counts Four through Eleven and/or Motion to Consolidate Counts Two/Three and Counts Four through Eleven and Brief in Support

Docket entry 391 McVeigh's Motion to Dismiss Counts Five through Eleven and/or to Consolidate Counts Four through Eleven and Brief in Support

Docket entry 392 Defendant Timothy McVeigh's Motion to Adopt Terry Nichols' Motions Challenging Face of Indictment

Docket entry 409 Errata Sheet to Motion to Dismiss Counts Five through Eleven and/or to Consolidate Counts Four through Eleven and Brief in Support [filed by McVeigh]

Docket entry 417 Notice re McVeigh's Motion to Dismiss Count One of the Indictment or Alternatively to Strike Surplusage and Incorporated Brief in Support [filed by Nichols]

Docket entry 418 Notice re Defendant McVeigh's Motions and Briefs in Support [filed by Nichols]

Docket entry 491 Brief of the United States in Opposition to Defendants' Motions to Dismiss or Alter the Indictment

Docket entry 600 Defendant Timothy McVeigh's Motion to Adopt Terry Nichols' Reply to the Government's Brief in Opposition to Defendants' Motions to Dismiss Indictment

Docket entry 601 Defendant McVeigh's Reply to the Government's Brief in Opposition to Defendants' Motions to Dismiss or Alter the Indictment

Docket entry 602 Notice re Defendant McVeigh's Reply to the Government's Brief in Opposition to Defendants' Motions to Dismiss or Alter the Indictment [fled by Nichols]

Docket entry 603 Reply to "Brief of the United States in Opposition to Defendants' Motions to Dismiss or Alter the Indictment" [filed by Nichols]

Docket entry 750 Status Report Regarding Substantive Motions, by Government

Docket entry 1390 Motion to Dismiss Counts One and Two on Grounds of Abatement [filed by Nichols]

Docket entry 1392 Notice of Erratum [filed by Nichols]

Docket entry 1415 Defendant McVeigh's Notice of Joining Motion to Dismiss Counts One and Two on Grounds of Abatement

Docket entry 1417 Brief of the United States in Opposition to Nichols' Motion to Dismiss Counts One and Two as Abated

Docket entry 1449 Supplemental Memorandum in Support of Motion to Dismiss Counts One and Two for Unconstitutionality of 18 U.S.C. § 2332a, Subsection 2—Commerce Clause [filed by Nichols]

### COMMERCE CLAUSE CHALLENGE

■ The defendants moved to dismiss counts one and two of the indictment on the ground that the statutory basis for them, 18 U.S.C. § 2332a, is unconstitutional because it is not within the delegated authority of Congress to legislate under the Commerce Clause of Article I of the Constitution. Count one charges a violation of § 2332a(a) by a conspiracy to use a "weapon of mass destruction" to kill and injure persons and to damage property of the United States. These two objectives are substantive crimes under subsections 2332a(a)(2) and (3). Count two charges the use of a "weapon of mass destruction" against persons, resulting in death and personal injury in violation of § 2332a(a)(2). Both counts describe the "weapon of mass destruction" as an "explosive bomb placed in a truck." The definition of the term "weapon of mass destruction" provided in § 2332a(b)(2)(A) includes any "destructive device" defined in § 921 of Title 18 of the United States Code. Subsection 921(a)(4) defines the term to include "(A) any explosive or incendiary (i) bomb...." The statute explicitly excludes "any device which is neither designed nor redesigned for use as a weapon...." § 921(a)(4)(C). Thus, "an explosive bomb placed in a truck" and designed for use as a weapon meets the definition of a weapon of mass destruction under § 2332a(b)(2).

The defendants rely principally on *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez*, the Supreme Court invalidated the Gun–Free Schools Act of 1990, codified in 18 U.S.C. § 922(q), because it exceeded the power of Congress to regulate interstate commerce and violated the division of powers principle in the Constitution.

Section 922(q) made it a federal crime to possess a gun within 1,000 feet from the grounds of a public, parochial or private school. The defendant was a 12th–grade student who carried a concealed handgun and bullets into his school. Neither the stat-

ute nor its legislative history provided any congressional findings regarding any effect on interstate commerce from such conduct. Writing for the Court, Chief Justice Rehnquist reviewed past cases and concluded "that the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *Id.* at ——, 115 S.Ct. at 1630. Finding no commercial activity was involved and considering that both crime and public education were historically and traditionally matters for regulation by state and local governments, the Court refused to defer to this congressional action. Of particular significance was the failure of the statute to include any "jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at ——, 115 S.Ct. at 1631. In the Court's view, acceptance of this statute would, in effect, convert the authority of Congress under the Commerce Clause "to a general police power of the sort retained by the States." *Id.* at ——, 115 S.Ct. at 1634.

Section 2332a(a)(2) is similar to § 922(q) (as it was in *Lopez*) in that it does not include any legislative findings concerning its purpose, and it does not contain any limitation restricting its application to conduct affecting interstate commerce. That similarity stops, however, when the bombing charged in this indictment is compared with a student carrying a concealed handgun and bullets into his high school building.

■ While explicit legislative findings of the effects on interstate commerce of particular conduct or activity are helpful to judicial review, the Court in *Lopez* recognized that they are not required. —— U.S. at ——, 115 S.Ct. at 1631. If the regulatory purpose is discernible from the language of the legislation, considered in the context of other statutes and the facts of the particular case, and if there is a rational basis for the belief that the regulated activity substantially affects interstate commerce, the enactment is a valid exercise of congressional authority.

■ The power of the courts to declare an act of Congress unconstitutional may be exercised only when it is necessary to adjudicate the issues properly presented by the parties in the actual controversy presented by the pleadings. The Supreme Court's admonition in *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), must be remembered. There, Justice Brennan wrote:

> This Court, as is the case with all federal courts, "has no jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules to which it has rigidly adhered, one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." Kindred to these rules is the rule that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.

362 U.S. at 21, 80 S.Ct. at 522 (citations omitted). Only in the special jurisprudence of the First Amendment has the Supreme Court considered overbreadth challenges going beyond the factual context of the case under consideration. *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987).

■ In *Lopez,* the statute was invalidated on a facial challenge, the Court deciding that there were no circumstances under which the act could be considered to be a valid regulation of activity having a substantial effect on interstate commerce. That may not be said of § 2332a. If the evidence at trial proves the factual allegations of the indictment, the impact on interstate commerce is both obvious and substantial. The use of a truck bomb of sufficient explosive power to destroy an office building, killing and injuring hundreds of its occupants, has a substantial effect on interstate commerce. That effect is even more apparent and substantial when the building is owned by the national government

and houses the employees of many of its agencies. An attack on such a building and the people in it by placement of a bomb in a truck in front of it produces consequences ranging far beyond state or local interests. As it is sought to be applied in this case, the statute is constitutional under the *Lopez* test.

The history of the statute now codified as § 2332a supports the conclusion that Congress considered the need for protection of interstate commerce as well as other national interests by federalizing this conduct even though it would also violate local criminal statutes. As the language went through the legislative process, before its enactment as § 60023 of Title VI of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103–322, committees made relevant findings, including the following from a conference report in 1991:

> The Congress finds that the use and threatened use of weapons of mass destruction, as defined in the statute enacted by subsection (b) of this section, gravely harm the national security and foreign relations interests of the United States, seriously affect interstate and foreign commerce, and disturb the domestic tranquility of the United States.

H.R.CONF.REP. No. 102–405, 102d Cong., 1st Sess. 46 (1991).

This statute is not unique in the failure of Congress to include such findings in the text of the act and in the lack of limiting language to narrow the scope of its application. Justice Breyer in his dissenting opinion in *Lopez* observed that Congress passed many criminal statutes, including at least 25 sections of the United States Code, using "affecting commerce" to define their scope and many other statutes that contain no jurisdictional language at all. —— U.S. at ——, 115 S.Ct. at 1664.

It is noteworthy that this criminal statute adopts the definitions within Chapter 44 of the United States Code, regulating firearms. The courts have consistently acknowledged the relationship of firearms and destructive devices to interstate commerce. For example, after *Lopez*, the Tenth Circuit Court of Appeals rejected a Commerce Clause challenge to the prohibition of possession and transfer of machine guns in 18 U.S.C. § 922(*o*) in *United States v. Wilks,* 58 F.3d 1518 (10th Cir.1995). The appellate court considered this specific prohibition in the broader context of Congressional firearms legislation expressly exercising the commerce power and concluded that machine guns are by their nature a commodity with a national market. The court also noted a Congressional finding regarding the link of machine guns to drug trafficking made at the time subsection (*o*) was enacted in 1986.

In post-*Lopez* opinions applying the Hobbs Act, 18 U.S.C. § 1951, the Tenth Circuit found that even though the conduct criminalized in a particular case might have only a *de minimis* effect on interstate commerce, the statute was a constitutional exercise of Congress's commerce power because the category of activity regulated had a substantial effect on interstate commerce. *United States v. Bruce,* 78 F.3d 1506, 1509 (10th Cir.1996); and *United States v. Bolton,* 68 F.3d 396, 399 (10th Cir.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996).

The necessary nexus with interstate commerce may also be provided by proof of the disruption of the operations of federal governmental agencies caused by the destruction of the building housing them. Counsel for defendant McVeigh has described this aspect of the case as support for his motion to compel discovery filed August 27, 1996:

> ... This is a case where the government itself was the target. Employees of the plaintiff were injured or killed. More than 15 government agencies lost employees to death. Whole departments and regional offices were destroyed, their work set back for months, in some cases years, and in still other cases, can never be resumed.
>
> Among these agencies were numerous law enforcement agencies, in fact, every major federal law enforcement agency except the FBI. The ATF, Secret Service, Drug Enforcement Agency and the Department of Defense, CID, and even the Postal Inspectors (their building was catty-

cornered from the Alfred P. Murrah Building) were involved as victims. . . . (Docket entry 1918 at 24).

■ While a substantial effect on interstate commerce is or will be obvious if the government proves the allegations of the indictment, caution dictates that the jury be required to make that finding. The government has suggested a special interrogatory for that purpose. It is more appropriate to include it as an essential element of the offense charged. Thus, for count two, the jury will be instructed that the government must prove beyond a reasonable doubt that this particular use of a weapon of mass destruction against persons in the United States substantially affected interstate commerce, defined as the flow of goods, merchandise, money or other property between states. For count one the jury must find that the objectives of the conspiracy would substantially affect interstate commerce. Such findings from the evidence would assure that the application of the statute to this case is constitutional.

The defendants contend that there is a fatal defect in the indictment if the court implies this additional element of the crime charged in count two because there is no way to know that the grand jury was aware that a substantial effect on interstate commerce was a jurisdictional requirement when they voted on this Indictment. Accordingly, the defendants' protection provided by the indictment clause in the Fifth Amendment was violated. The argument is rejected because the language of the indictment, taken as a whole, sufficiently alleges facts showing effects on interstate commerce. By its approval of this charge, the grand jury necessarily found the required substantial effect on interstate commerce.

### ABATEMENT ARGUMENT

■ Section 2332a(a)(2) was amended, after this indictment, by § 725 of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996), to require that as to weapons crimes against persons "the results of such use affect interstate or foreign commerce or, in the case of a threat, attempt, or conspiracy, would have affected interstate or foreign commerce." Defendant Terry Nichols contends that this amendment supports an additional motion to dismiss counts one and two on grounds of "abatement." Defendant Timothy McVeigh has joined this motion. The doctrine of abatement is based on the premise that by new legislation Congress has expressly or impliedly repealed the statute which forms the basis for a pending prosecution. The general savings statute, 1 U.S.C. § 109, requires that such an intent to repeal be clearly expressed in the new enactment. All that Congress did here was to make explicit for future cases what this court has found to be implicit in this case—a jurisdictional element ensuring the constitutionality of the statute prohibiting the use of weapons of mass destruction against persons when the result or anticipated result will have a substantial effect on interstate commerce. The doctrine of abatement is not applicable.

### INTENT REQUIREMENT FOR COUNTS ONE, TWO AND THREE

The defendants have moved to dismiss counts one and two on the ground that § 2332a fails to contain any scienter requirement. The indictment alleges that the defendants acted "knowingly, intentionally, willfully and maliciously." None of these words appear in § 2332a. The defendants say that they have no notice of what mental element the government expects to prove at trial. They argue further that the principle of lenity requires that this statute be construed favorably to the defendants and that, in turn, requires the court to infer the intent element which places the highest burden of proof on the government—an intent to kill. They contend that such an intent is also required for a violation of § 844(f) charged in count three. Further, the defendants assert that if an intention to kill is not required for counts one, two and three, there is a violation of the Eighth Amendment prohibition against cruel and unusual punishment because the death penalty can be imposed only for intentional killings.

The government contends that to convict the defendants of the crimes charged in these first three counts, the prosecution must

prove only that the deaths of the victims resulted from the use of the described explosive device, and that an intention to kill is not an essential element of these three offenses. Thus, the resulting deaths affect sentencing, by enhancing the potential penalty, but do not affect the definition of these crimes under § 2332a and § 844(f).

To assist consideration of these and other issues raised by the defendants' motions, counsel were asked to submit proposed jury instructions as to the elements of the offenses charged. Those proposals were received and discussed in a non-public hearing. The exercise was helpful, but, the court will await completion of the evidence before settling instructions with counsel.

▮ The first issue raised by these motions is the legislative intent in these statutes. The third count, charging a violation of 18 U.S.C. § 844(f), is a good beginning point because there is relevant authority concerning § 844(i), a statute with parallel language, criminalizing the destruction by fire or explosives of property used in interstate commerce or in any activity affecting interstate commerce. In *United States v. Ryan*, 9 F.3d 660 (8th Cir.1993), *reh'g en banc* 41 F.3d 361 (1944), *cert. denied* —— U.S. ——, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995), the defendant, Ryan, was convicted of maliciously damaging such a building with fire under § 844(i). Two firefighters died fighting the blaze. Ryan was sentenced to 328 months in prison under sentencing guidelines for murder. One basis for his appeal was that those sentencing guidelines were misapplied because he was not convicted of murder. Another basis for his appeal was that the jury was not properly instructed on the elements of the offense because they were not required to find an intent to kill the firefighters.

Ryan argued that § 844(i) creates three distinct offenses with different elements: (1) arson (destruction of property by fire or explosive) not resulting in personal injury; (2) arson resulting in personal injury; and (3) arson resulting in death. The government argued that the statute created one crime with three different penalties, depending upon the results of the malicious destruction of the property by fire or explosive.

The court held that the statutory language "if death results ... shall also be subject to the death penalty" enhances the penalty but does not describe the crime. It observed that § 844(i) is primarily a single, lengthy sentence, first defining the conduct made criminal and then prescribing alternative penalties depending upon whether personal injury or death is an additional result from the destruction of the property. Noting that the statute was not free from ambiguity, the court additionally reviewed the legislative history and concluded:

> Our examination of the origins of the law and the intentions of its drafters leads inescapably to the conclusion that Congress's concern was with the stringent and severe treatment of those who violate the explosives/arson law. Congress meant to deal with arsonists severely, not to overlay a myriad of elements of proof onto the plain statutory requirements....

*Id.* at 669. The court affirmed the use of sentencing guidelines for first degree murder when death results from a violation of § 844(i).

In *United States v. Prevatte*, 16 F.3d 767 (7th Cir.1994), the Seventh Circuit reached the same conclusion regarding the "if death results" language, saying:

> Section 844(i) is not the functional equivalent of first degree murder; it is an arson statute, with severe repercussions for the arsonist whose actions result in death of a human being. The court and jury made the determination required by the statute, nothing more. Nothing in the statutory language or history of § 844(i) suggests that the elements of the offense change when death results, and we shall not impose these additional burdens on the government absent statutory language to the contrary.

*Id.* at 782, n. 15. In *United States v. Gullett*, 75 F.3d 941 (4th Cir.1996), the court endorsed the Seventh Circuit's reasoning in *Prevatte*.

The grammatical structure of § 2332a(a) is similar to that of § 844(f) and § 844(i). There is a single long sentence, first defining the criminal conduct as using, attempting to

use or conspiring to use a weapon of mass destruction against (1) nationals of the United States while outside of the United States, (2) any person within the United States and (3) any property owned, leased or used by the United States. The sentence proceeds to prescribe alternative punishments depending upon whether death results. Structurally, there is little doubt that the conditional phrase "if death results" operates to enhance the penalty when death is the consequence of the criminal conduct.

This conclusion is consistent with cases interpreting "if death results" in other criminal statutes. The Eleventh Circuit held that the "if death results" language in the car jacking statute, 18 U.S.C. § 2119, was not an essential element of the crime in *United States v. Williams,* 51 F.3d 1004 (11th Cir.), *cert. denied* —— U.S. ——, 116 S.Ct. 258, 133 L.Ed.2d 182 (1995). That court reviewed similar provisions in other statutes, where courts have consistently interpreted the "if death results" language to enhance the penalty. *Id.* at 1009; *United States v. Rivera–Gomez,* 67 F.3d 993 (1st Cir.1995).

The same reasoning was applied by the Tenth Circuit Court of Appeals in deciding *United States v. Gregg,* 803 F.2d 568 (10th Cir.1986), *cert. denied* 480 U.S. 920, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987), a prosecution under the Armed Career Criminal Act, 18 U.S.C.App. 1202(a); *accord United States v. Hawkins,* 811 F.2d 210 (3d Cir.), *cert. denied* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); *United States v. Rush,* 840 F.2d 574 (8th Cir.), *cert. denied* 487 U.S. 1238, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988). Similarly, the "if death results" provisions of two federal civil rights statutes have been held to be penalty enhancing provisions. *Catala Fonfrias v. United States,* 951 F.2d 423 (1st Cir.1991), *cert. denied* 506 U.S. 834, 113 S.Ct. 105, 121 L.Ed.2d 64 (1992).

This approach is consistent with *Smith v. United States,* 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959), a case cited by the defendants. That was a prosecution under the Federal Kidnapping Act, 18 U.S.C. § 1201 which, at that time, provided that the penalty would be death "if the kidnapped person has not been liberated unharmed, and

if the verdict of the jury shall so recommend," and provided the alternative of imprisonment for any term of years or for life if the death penalty was not imposed. The case arose under a motion to vacate sentence pursuant to 28 U.S.C. § 2255 by a prisoner who had pleaded guilty to an information which contained no allegation concerning whether the victim had been released unharmed. The petitioner's argument was that the statute made kidnapping a capital offense which could not be prosecuted by information because Rule 7(a) of the Federal Rules of Criminal Procedure requires offenses punishable by death to be prosecuted by indictment and because the Fifth Amendment directs that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." The Court, speaking through Chief Justice Warren, reversed the conviction and remanded the case with instructions to dismiss the information because under Rule 7 the United States Attorney had no authority to file an information charging a capital offense, even with a waiver of indictment. The Court expressly rejected the government's argument that the statute described two offenses: (1) a non-capital offense when the victim is released unharmed, and (2) a capital offense when the victim has been harmed. *Smith* is, therefore, strong support for the view that the "if death results" provision of § 2332a(a) and § 844(f) is an element that enhances the possible penalty rather than an element that defines the crime.

▮▮▮ The essence of the defendants' argument under the Eighth Amendment is that in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and in the many cases following it, the Supreme Court has held that death is cruel and unusual punishment if the sentence decision is not made under procedures that assure consideration of the individual defendant and the circumstances of the offense. Furthermore, the defendants assert that the Court's jurisprudence is unequivocal that the penalty of death may only be imposed for crimes in which a jury has found an intentional killing.

In *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Su-

preme Court instructed that to avoid the arbitrary and capricious sentencing condemned in *Furman* "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Id.* at 877, 103 S.Ct. at 2742. In *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), the Court observed that this necessary "narrowing function" may be accomplished by the legislature in defining a capital offense or by jury findings of aggravating circumstances at the penalty phase. *Id.* at 246, 108 S.Ct. at 555. In *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), the Court made proportionality an Eighth Amendment requirement, holding that death is an excessive penalty for rape, and in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), it required that the sentencing procedure direct the decision-maker to consider mitigating information related to the personal culpability of the defendant to assure that the sentence is a " 'reasoned *moral* response to the defendant's background, character and crime.' " *Id.* at 319, 109 S.Ct. at 2947, quoting from concurring opinion of Justice O'Connor in *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987).

The difference between the arguments made by the prosecution and the defense is centered on the timing of these necessary findings. The defense argues that the underlying offense must meet at least the narrowing requirement before a defendant may be "propelled" into a death penalty sentence hearing. The government responds that the provisions of the Death Penalty Act, codified at 18 U.S.C. §§ 3591–3598, satisfy the Eighth Amendment by providing for a special hearing to determine whether a sentence of death is justified (§ 3593) and proof of an intentional killing or its equivalent (§ 3591). Thus, even though an intent to kill is not an element of the offense charged in the first three counts, the prosecution must prove the intention required under § 3591 before aggravating and mitigating factors can be considered to determine if imposition of a sentence of

death is justified. The government has given written notice of intent to seek the death penalty as to each defendant on every count. In each notice, the prosecution specifically declared that it would rely on the preliminary factors with respect to intent set out in § 3591(a)(2) at a penalty phase hearing to establish each defendant's eligibility for the death penalty.

The defendants vigorously argue the view expressed by Justice Clark in his concurring and dissenting opinion in *Smith,* joined by Justices Harlan and Stewart, that the conviction should have been reversed because it violated the grand jury indictment requirement of the Fifth Amendment. Justice Clark criticized the majority opinion in these words:

> The Court, however, holds that § 1201(a) creates a "single offense ... [which] is punishable by death if certain proof is introduced at trial." It reasons that this makes every kidnaping a capital case requiring grand jury action. But it does not require that the grand jury consider whether "the kidnaped person has not been liberated unharmed" and so allege in the indictment. Thus the grand jury is deprived of any knowledge of the element of the offense that makes it capital. Hence a grand jury in complete ignorance of the facts as to harm suffered by the victim at the time of release is required to return an indictment which will support the death penalty if proof of such harm is shown at the trial. This puts the law as to capital cases into the hands of the prosecutor, not the grand jury, where the Fifth Amendment and Rule 7(a) have lodged it. Nor does it strengthen the grand jury, to use the words of the Court, as a "substantial safeguard against oppressive and arbitrary proceedings." On the contrary, the Court's reference to discovery proceedings after indictment as a means for acquainting a defendant "with the scope of the trial and the criminal transaction to be proved" clearly shows the fallacy of its position. The grand jury should have this information before it returns a capital charge, otherwise, none should exist under the indictment. By this reasoning, the Court

deprives the defendant of the safeguard of proper grand jury proceedings as required by the Constitution in capital cases.

*Id.* at 12–13, 79 S.Ct. at 998–99.

Using this same reasoning, the defendants argue that the first three counts of this indictment are invalid because under the sentencing scheme prescribed by the Death Penalty Act, the prosecution has complete discretion as to whether to seek the death penalty by giving the required notice. The grand jury has no role in making that decision. The argument challenges both the sufficiency of the indictment and the adequacy of the death penalty notice. It also supports the contention that an intention to kill the occupants of the Murrah Building is an essential element of these offenses charged in the first three counts.

The question of whether the defendants have been deprived of the protection of the grand jury before being exposed to a death penalty hearing becomes abstract, if not moot, when the factual allegations of the indictment are considered. Paragraph 38 of count one reads as follows:

> As intended by **McVeigh and Nichols,** the truck bomb explosion resulted in death and personal injury and the destruction of the Alfred P. Murrah Federal Building, located within the Western District of Oklahoma. The following persons were present at the Alfred P. Murrah Federal Building on April 19, 1995, and were killed as a result of the explosion.... [names and ages given]

That paragraph is incorporated by reference in counts two and three. Thus, the grand jury decided that there was evidence to support the exposure of the defendants to the death penalty. Indeed, in arguing their motions to strike the prosecutors' notice of intention to seek the death penalty, defense counsel have included a contention that there is an unlawful duplication of factors as in *United States v. McCullah,* 76 F.3d 1087, *reh'g denied* 87 F.3d 1136 (10th Cir.1996), because these allegations in paragraph 38 are also included as aggravating factors in the notice. Those motions will be the subject of a separate opinion.

Although this court is convinced that Congress intended that resulting deaths enhance the penalty rather than define the crimes under both § 2332a and § 844(f), there is concern regarding the constitutional role of the jury in capital cases. To avoid any weakening of the protections provided by the Fifth, Sixth and Eighth Amendments, there must be a jury finding, beyond a reasonable doubt, that deaths were caused by the defendant's conduct before proceeding with a death penalty hearing. Under § 844(f) the finding requires proximate causation, implying a foreseeability requirement for count three. Intention with respect to any such deaths will then be determined at the penalty hearing as required by 18 U.S.C. § 3591 if there is a conviction.

Whether the prosecution must prove all that the grand jury alleged, including the intent to kill in paragraph 38 of count one, re-alleged in counts two and three—is answered in *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). The issue there was a claim of fatal variance between the scope of the mail fraud scheme alleged and the proof of the scheme to defraud at trial. The Court held that the narrower fraudulent scheme was within the language of the indictment and that the Fifth Amendment right to grand jury consideration was not violated. The broader language was considered surplusage. The Court explicitly rejected the argument that this narrowing of the indictment was an amendment of it.

In sum, an intention to kill is not required for conviction of the offenses charged in the first three counts. The required intent for count one is willful participation in an agreement to use an explosive bomb in a truck as a weapon to attack the Alfred P. Murrah Federal Building in Oklahoma City and the persons in it. For count two there must be an intent to use that same weapon of mass destruction against the persons in the Murrah Building. Count three requires a finding of malice in the use of that truck bomb against a federal building.

## MULTIPLICITY OF COUNTS

█ The defendants have moved to consolidate counts two and three because they

charge the same conduct. They argue that count three, "Destruction of a Building by Explosives" in violation of § 844(f) is virtually identical with the use of a weapon of mass destruction under § 2332a in count two and that the latter is a lesser included offense of the former. The argument misapprehends the factual and legal allegations in these two counts. Count two charges a violation of subsection (a)(2) of § 2332a by the use of a weapon of mass destruction against persons within the United States; whereas the § 844(f) charge in count three alleges the malicious destruction, by an explosive, of real and personal property owned and used by the United States. These are separate and distinct offenses with separate elements and meet the requirement of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), that each offense has an element not found in the other. The intended targets are different, and they are essential elements of each offense.

▮ The defendants also contend that the first degree murder charges in counts four through eleven must be consolidated into a single count because they are all the result of a single incident of criminal conduct, differing only in the identities of the victims and their law enforcement positions. These counts are based on 18 U.S.C. § 1111(a), defining murder as the unlawful killing of a human being with malice aforethought with a first degree classification because the killings were willful, deliberate, malicious and premeditated. These are made federal offenses because each victim in these counts was an officer or employee of the United States engaged in the performance of official duties within the coverage of 18 U.S.C. § 1114. The government could have charged these killings under the felony murder doctrine because § 1111 includes killings committed in the perpetration of other crimes, which may include counts two and three. The prosecutors have made clear, however, that they are not relying on the felony murder doctrine. The prosecution intends to prove that the defendants acted with "malice aforethought" and that their conduct was "premeditated" and deliberate. As discussed earlier in this opinion, such intent is not

required for the first three counts and that difference satisfies the *Blockburger* test.

▮ Each of the murder counts is a separate crime because the killing of each of these eight victims is a separate "unit of prosecution." Generally speaking, a unit of prosecution is determined according to legislative intent in defining the criminal offense. *Sanabria v. United States,* 437 U.S. 54, 69–70, 98 S.Ct. 2170, 2181–82, 57 L.Ed.2d 43 (1978). The apparent purpose of § 1114 is the protection of persons performing the duties of the named positions by federalizing the crime of killing them. That is different from *Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), wherein the defendant was prosecuted for assaulting two officers by firing a single shotgun blast at them. The Court ruled that there was only one offense because the criminal conduct was interference with the officers' duty, and they both were performing the same duty.

This interpretation of the federal murder statute is consistent with state courts' consideration of double jeopardy in cases involving multiple deaths. In *People v. Bowman,* 669 P.2d 1369 (Colo.1983), the Colorado Supreme Court held that a single act of arson supported separate first degree murder convictions for the deaths of two victims. Illinois has held that a single act of arson will support three murder convictions. *People v. Williams,* 131 Ill.App.3d 597, 86 Ill.Dec. 703, 475 N.E.2d 1082 (1985). The Connecticut Supreme Court held that two consecutive life terms upon conviction of 14 counts of arson murder arising out of a single arson did not violate the double jeopardy clause. *State v. Madera,* 198 Conn. 92, 503 A.2d 136 (1985). In *State v. Rieck,* 286 N.W.2d 724 (Minn. 1979), a defendant's separate convictions and sentences were upheld on five counts of aggravated assault arising out of the single firebombing of the victims' house. In *State v. Harris,* 2 Wash.App. 272, 469 P.2d 937 (1970), *rev'd on other grounds,* 78 Wash.2d 894, 480 P.2d 484 (1971), *aff'd* 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971), the death of two victims and the injury of a third by a single bomb was held to constitute three separate offenses. In *Neal v. State,* 55

Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839 (1960), *cert. denied,* 365 U.S. 823, 81 S.Ct. 708, 5 L.Ed.2d 700 (1961), a writ of habeas corpus was denied where a defendant was convicted on two counts of attempted murder arising from a single gasoline bombing.

The crime of murder is not complete without the death of the victim of the criminal conduct. Each death is, therefore, a separate crime.

 The parties dispute whether the government must prove that the defendants had knowledge that the victims identified in counts four through eleven were federal officers or employees. The language of the indictment is that these victims were killed while "engaged in and on account of the performance" of their official duties. Section 1114 makes criminal the killing of specified federal officers and employees "engaged in or on account of the performance" of their official duties. It is well established that knowledge of a victim's status and identity as a federal officer is not a required element for a homicide conviction under § 1114. *McNabb v. United States,* 123 F.2d 848 (6th Cir.1941), *rev'd on other grounds* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, *reh'g denied* 319 U.S. 784, 63 S.Ct. 1322, 87 L.Ed. 1727 (1943); *see also United States v. Alvarez,* 755 F.2d 830 (11th Cir.), *cert. denied* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985), *cert. denied sub nom. Portal v. United States,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 380 (1987) (defendant's knowledge of victim's identity and status is irrelevant in prosecution for assault or murder of federal agent protected by 18 U.S.C. § 1114). Arguably the killing of a federal officer "on account of the performance" of his or her official duties implies a retaliatory intent requiring knowledge of official identity. The government has made clear, however, that it will seek to prove that the victims named in counts four through eleven were killed while "engaged in" the performance of their duties. Accordingly, the prosecutors need not prove that the defendants were aware of their victims' identities and status as federal officers.

The prohibition of multiplicity in charging crimes is, of course, based on the Double Jeopardy Clause, prohibiting multiple prosecutions for the same conduct. That clause also prohibits multiple punishments, an additional issue raised by the defense. These issues are now premature and may appropriately be addressed when and if there are any convictions in this proceeding.

## MOTION TO STRIKE

 The defendants seek an order striking surplusage from the indictment, claiming prejudice from pejorative allegations going beyond the essential elements of the charged offenses. The inclusion of overt acts that describe uncharged criminal conduct, allegations about aliases and the use of emotionally charged words and phrases are said to violate Rule 7 of the Federal Rules of Criminal Procedure. The motion to strike is premature. The court does not intend to provide copies of the indictment to the jury panel before or during voir dire or to the jury before submitting instructions. When the evidence is closed the court will compare the evidence with the indictment and make any appropriate redactions.

Upon the foregoing, it is

ORDERED that the defendants' motions to adopt each other's motions are granted; the motion to strike surplusage from the indictment is reserved for consideration at trial; the motion asserting a violation of the Double Jeopardy Clause by multiple punishment is reserved for a sentencing hearing; and the relief requested in all other motions listed in this memorandum opinion is denied.