**UNITED STATES of America, Plaintiff–Respondent,**

v.

**Terry Lynn NICHOLS, Defendant–Movant.**

No. Crim.A. 96–CR–68–M,
No. Civ.A. 00–M–2027.

United States District Court, D. Colorado.

Feb. 27, 2001.

John M. Richilano, Richilano & Ridley, PC, Denver, CO, Barry A. Schwartz, Law Office of John Henry Schlie and Barry Schwartz, Denver, CO, for Plaintiff–Respondent.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

■ In his motion filed under 28 U.S.C. § 2255, Terry Lynn Nichols seeks to vacate his conviction and sentence for violation of 18 U.S.C. § 2332a(a) by claiming that actual knowledge that his participation in the conspiracy to bomb the Alfred P. Murrah Federal Building would result in the deaths of its occupants was an essential element of the offense and the court's failure to so instruct the jury violated his rights under the Due Process Clause of the Fifth Amendment and his right to jury trial under the Sixth Amendment. The argument is based on the language in the opinion deciding *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). That decision was issued after the Tenth Circuit Court of Appeals affirmed Mr. Nichols' conviction and sentence on his direct appeal, *United States v. Nichols,* 169 F.3d 1255 (10th Cir. 1999), and is, therefore, properly raised in this collateral proceeding.

The Supreme Court's ruling in *Apprendi* is not applicable in this case because the federal statute, read in the context of federal sentencing law, is different from the New Jersey "hate crime" penalty statute found to be unconstitutional in *Apprendi.*

Section 2332a(a) of Title 18, as it read in 1995[1], makes criminal a conspiracy to use a weapon of mass destruction against persons in the United States or property of the United States and provides for a penalty of imprisonment for any term of years or for life for any violation. The statute provides that "if death results," the offender "shall be punished by death or imprisonment for any term of years or for life." Thus, the fact that deaths result from the crime of conspiracy exposes the convicted conspirators to consideration of a death sentence.

The death penalty statutes, 18 U.S.C. § 3591–3598, establish the special procedure to be followed to consider the sentence of any person found guilty of an offense for which a sentence of death is provided. The procedure complies with

the Eighth Amendment by requiring a separate evidentiary hearing, § 3593, and jury findings beyond a reasonable doubt that the defendant acted with the criminal intent required by § 3591 and, if so, whether death is a justified sentence for the defendant considering aggravating and mitigating circumstances under § 3592.

The substantive statute, 18 U.S.C. § 2332a(a), does not include a specific intent requirement. Both defendants Timothy McVeigh and Terry Nichols moved to dismiss the counts of the indictment charging violations of § 2332a for that reason. In denying that motion, this court ruled as follows:

> Although this court is convinced that Congress intended that resulting deaths enhance the penalty rather than define the crimes under both § 2332a and § 844(f), there is concern regarding the constitutional role of the jury in capital cases. To avoid any weakening of the protections provided by the Fifth, Sixth and Eighth Amendments, there must be a jury finding, beyond a reasonable doubt, that deaths were caused by the defendant's conduct before proceeding with a death penalty hearing. Under § 844(f) the finding requires proximate causation, implying a foreseeability requirement for count three. Intention with respect to any such deaths will then be determined at the penalty hearing as required by 18 U.S.C. § 3591 if there is a conviction.

> Whether the prosecution must prove all that the grand jury alleged, including the intent to kill in paragraph 38 of count one, re-alleged in counts two and three—is answered in *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). The issue there was a claim of fatal variance between the scope of the mail fraud scheme alleged and the proof of the scheme to defraud at trial. The Court held that the nar-rower fraudulent scheme was within the language of the indictment and that the Fifth Amendment right to grand jury consideration was not violated. The broader language was considered surplusage. The Court explicitly rejected the argument that this narrowing of the indictment was an amendment of it.

> In sum, an intention to kill is not required for conviction of the offenses charged in the first three counts. The required intent for count one is willful participation in an agreement to use an explosive bomb in a truck as a weapon to attack the Alfred P. Murrah Federal Building in Oklahoma City and the persons in it. For count two there must be an intent to use that same weapon of mass destruction against the persons in the Murrah Building. Count three requires a finding of malice in the use of that truck bomb against a federal building.

*U.S. v. McVeigh*, 940 F.Supp. 1571, 1582 (D.Colo.1996).[2]

In this case, Count One charged that Timothy McVeigh, Terry Nichols and possibly other persons conspired to use a truck bomb against the Murrah Building and the people in it. The instructions told the jurors that to find Mr. Nichols guilty on that charge, they must find, beyond a reasonable doubt:

> (1) That two or more persons, including the defendant, Terry Nichols, agreed to use an explosive bomb in a truck as a weapon of mass destruction against a federal building and the persons inside it;

> (2) That the defendant, Terry Lynn Nichols, knowingly and voluntarily became a member of the conspiracy, with the intent to advance or further its objectives; and

---

**2.** Count Three charged a violation of 18 U.S.C. § 844(f), malicious destruction of a federal building by explosive.

(3) That achievement of the objectives of the conspiracy would have substantially affected interstate commerce.

Tr. 14601. The court told the jury that "The term 'knowingly,' as used in these instructions, means that the government must have proven to you beyond a reasonable doubt that the act was done voluntarily and intentionally, not because of mistake or accident." Tr. 14608.

The instructions and the verdict form directed the jury to answer the following two questions if they found Terry Nichols guilty of the conspiracy charged in Count One: "Do you find that the government proved beyond a reasonable doubt that the crime or crimes committed by the defendant, Terry Lynn Nichols, as found above, resulted in the death of one or more of the persons named in the indictment?" and "Was the death of such person or persons a foreseeable result of the defendant's criminal conduct?" Doc. 5814, p. 2.

The jury's affirmative answers to both questions required the trial to proceed to a penalty phase hearing with the taking of additional evidence. The jury was instructed that a death sentence could not be imposed unless Terry Nichols acted with an intent to kill the victims of the bombing or had a reckless disregard for their lives. Those questions were asked separately in the Special Verdict Form. Upon the jury's failure to reach unanimous agreement on their answers to these intent questions, the court discharged the jury and proceeded to determine Nichols' sentence under Fed. R.Crim.P. 32 and the Sentencing Guidelines.

Upon Mr. Nichols' direct appeal, the Tenth Circuit Court of Appeals approved this court's instructions to the jury, and citing its opinion in *United States v. McVeigh,* 153 F.3d 1166 (10th Cir.1998), concluded that the phrase "if death results" is not an *actus reus* element of the offense necessitating a specific intent to kill. *Nichols,* 169 F.3d at 1261. In *McVeigh,* the Tenth Circuit analyzed 18 U.S.C. § 2332a at length:

.The version of 18 U.S.C. § 2332a(a) in effect at the time of the bombing provided:

**Offense.**—A person who uses, or attempts or conspires to use, a weapon of mass destruction—

(1) against a national of· the United States while such national is outside of the United States;

(2) against any person within the United States; or

(3) against any property that is owned, leased or used by the United States or by any department or agency of the United States, whether the property is within or outside of the United States,

shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

From the plain language of the statute, it is clear that "intent to kill" is not a statutorily required element of § 2332a(a). In fact, no level of intent is specified.

When Congress fails to specify the degree of criminal intent required for a statutory offense, courts will either read in a level of intent or hold that the statute creates a strict liability crime.

In light of the nature of the offense at issue and the severity of the prescribed punishments, we do not believe that § 2332a is a strict liability crime.... Thus, we must decide the appropriate level of intent to read into the statute.

\* \* \* \* \* \*

We conclude that the intent standard of "knowingly" is appropriate for each of the elements of a § 2332a violation....

The fact that the statute authorizes the death penalty "if death results" from the use of the weapon of mass destruction does not persuade us that the statute incorporates "intent to kill" as an element. Looking at the plain language and structure of the statute, we conclude

that the phrase "if death results" is a sentencing factor rather than an element of the offense.... The natural reading of the text of § 2332a(a) is that subsections (a)(1), (a)(2), and (a)(3) define the elements of the crime, i.e., the use of a weapon of mass destruction against specified targets. The penalties follow separately—any term of years, life imprisonment, and in some cases, the death penalty. The proof needed to trigger the death penalty, however, is not necessary to prove a violation of the statute. Sentencing enhancements generally are not treated as elements and do not increase the government's burden of proof during the guilt phase of a trial....

Further, even if the phrase "if death results" were to be construed as an element of the offense rather than a sentencing enhancement, it would not be an intent element but only an element of factual consequences. Nothing in § 2332a(a) links the "if death results" language of the statute to any scienter whatsoever.

McVeigh also contends that § 2332a must require the government to prove intent to kill because it authorizes the death penalty, which cannot be imposed absent proof of intent to kill. We are well aware that the government may not secure a death sentence without proving a certain level of criminal intent.... However, the Supreme Court recently reiterated that *Enmund* did not establish any new substantive elements of a capital crime, and that these necessary findings may be made at any stage of the proceedings, including during sentencing or on appeal. Thus, "intent to kill" need not be incorporated into the jury instructions during the guilt phase of a capital case if it is not an element of the charged crime.

*McVeigh,* 153 F.3d at 1193–95 (citations and internal quotations omitted).

Considered in the full context of the statutory definition of the crime, the in-structions given to the jury and the Tenth Circuit's opinions in *McVeigh* and *Nichols,* the ruling in *Apprendi* does not affect the conviction of Terry Nichols on Count One. The holding in *Apprendi* is that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 120 S.Ct. at 2362–63. Mr. Nichols was sentenced to life imprisonment, the statutory maximum for a violation of § 2332a(a) if there is no resulting death. The fact that people were killed by the truck bomb "exposed" Terry Nichols to consideration of a death sentence at the special hearing. Because the jury did not unanimously agree that the government proved beyond a reasonable doubt that he acted with the requisite criminal intent under 18 U.S.C. § 3591 no death sentence could be imposed. The rule of constitutional law established by *Apprendi* applies only when there is a factual determination by the court that increases the maximum sentence beyond the statutory range authorized by the jury verdict. That did not happen in this case.

Nothing in *Apprendi* undermines the Tenth Circuit's conclusion that "even if the phrase 'if death results' were to be construed as an element of the offense rather than a sentencing enhancement, it would not be an intent element but only an element of factual consequences." *McVeigh,* 153 F.3d at 1195.

The essence of the defendant's argument is that if the jury had been told that a conviction on Count One required a finding that Terry Nichols knew that deaths would result from the use of the truck bomb against the Murrah Building and the people in it, they might not have found him guilty of the conspiracy. That is unwarranted conjecture.

The jury was instructed:

What the Government must prove is that the defendant, Terry Lynn Nichols

and at least one other person, did knowingly and deliberately arrive at some type of an agreement that they, and perhaps others, would use a weapon of mass destruction against the Alfred P. Murrah Federal Building in Oklahoma City and the persons in it by means of some common plan or course of action as alleged in Count One of the indictment. Proof of such a common understanding and deliberate agreement among two or more persons, including the defendant now on trial, is the key element of the charge of criminal conspiracy.

Mere presence at the scene of alleged—an alleged transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other and may have assembled together and discussed common aims or interests, do not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens—happens to act in a way which advances some object or purpose of the conspiracy does not thereby become a conspirator.

But a person may join in an agreement or understanding, as required for conviction, without knowing all the details of the agreement or understanding, and without knowing who all the members are. Further, it is not necessary that a person agree to play any particular part in carrying out the agreement or understanding. A person may become a member of a conspiracy even if that person agrees to play only a minor part in the conspiracy, as long as that person has an understanding of the unlawful nature of the plan and voluntarily and intentionally participates in it as something he wants to bring about.

Before you may find that Mr. Nichols became a member of the conspiracy charged in Count One of the indictment, the evidence in the case must show beyond a reasonable doubt that Mr. Nichols knew the purpose or goal of the agreement or understanding and deliberately entered into the agreement intending, in some way, to accomplish the goal or purpose by this common plan or joint action. Merely associating with others and discussing common goals, mere similarity of conduct between or among such persons, merely being present at the place where a crime takes place or is discussed, or even knowing about criminal conduct does not, of itself, make someone a member of the conspiracy or a conspirator.

Tr. 14602–04.

That instruction amplifies the guilty knowledge necessary for the verdict that warranted the life sentence for Mr. Nichols.

■ After an extended analysis, the Tenth Circuit Court of Appeals affirmed the selection of the first degree murder guideline, 1994 U.S.S.G. § 2A1.1, in determining the life sentence. *Nichols,* 169 F.3d at 1269–76. Nothing in the pending motion requires reconsideration of that result. *Apprendi* did not impose a constitutional limitation on the court's role in determining a specific sentence within the statutory maximum authorized by the jury verdict.

■ The other ground for the defendant's motion to vacate his conviction and sentence is the claim that the court's exclusion of Dr. Frederic Whitehurst as an expert witness for the defense violated the Due Process Clause of the Fifth Amendment.[3] The Tenth Circuit Court of Appeals affirmed the exclusionary ruling as a

**3.** A third claim made in the motion and the briefs was that the government failed to turn over "information control sheets" in violation of a reciprocal discovery agreement and the obligation of disclosure under *Brady v. Maryland.* This contention was withdrawn at oral argument because the issues were decided on a Fed.R.Crim.P. 33 motion for new trial for newly discovered evidence which was affirmed on appeal after the briefs were filed in this matter.

discretionary sanction under Fed. R.Crim.P. 16(d)(2) on the direct appeal. *Nichols,* 169 F.3d at 1266–69. It did not address the Due Process Clause saying that the constitutional claim was not sufficiently developed for consideration on appeal.

Mr. Nichols does not contend that he was denied the effective assistance of counsel at trial or on appeal. Accordingly, he must show that the testimony of Dr. Whitehurst was of such material importance that it undermines confidence in the verdict and presents a probability that the result of the trial would have been different. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 872, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). The question is whether the defendant was denied the opportunity to present critical exculpatory evidence. That has not been shown. Taking at face value the summary of the expected opinion testimony in the offer of proof submitted by the defendant's trial counsel, the witness would have simply cast doubt on the credibility of FBI Agent Steven Burmeister's testimony that he saw ammonium nitrate crystals embedded in a fragment of the truck body recovered at the crime scene and the conclusion that ammonium nitrate was a component of the truck bomb. Mr. Burmeister's testimony was not the sole support for the government's contention that ammonium nitrate was used in the truck bomb and that Terry Nichols obtained it for that purpose. The characteristics of the explosion were consistent with the use of such explosive material according to another expert witness, Linda Jones, who gave that opinion independently of Mr. Burmeister's testimony. She said that Mr. Burmeister's findings supported that opinion. Moreover, the quantities of the purchases made were consistent with its use as an explosive.

Mr. Burmeister's opinions did not go unchallenged. A reading of the vigorous cross examination shows that Mr. Nichols' attorney raised all of the same points of skepticism that Dr. Whitehurst would suggest and that Mr. Burmeister conceded many of them. In short, Dr. Whitehurst would not have given the jury evidence that would likely be exculpatory of Terry Nichols on the charge of conspiracy.

Upon the foregoing, it is

ORDERED that the motion to vacate sentence is denied and this civil action is dismissed.