MEMORANDUM OPINION
 

 URBINA, District Judge.
 

 Denying Defendant’s Motion to Dismiss and Granting Plaintiffs’ Motion to Amend their Complaint and Motion for Summary Judgment
 

 This matter comes before the court upon defendant Acting United States Trade Representative Charlene Barshefsky’s motion to dismiss and plaintiffs Public Citizen and Sierra Club’s motion for summary judgment. Upon consideration of the parties’ submissions and the entire record herein, the court, in the accompanying Order, denies defendant’s motion to dismiss
 
 [2]
 
 and grants plaintiffs’ motion for summary judgment.
 

 
 *33
 
 I. Background
 

 Pursuant to 19 U.S.C. § 2155(c)(1) & (2), the President of the United States and the United States Trade Representative (“USTR”) have established 21 private sector Industry Policy, Sectoral, and Functional Advisory Committees (collectively, the “advisory committees”) to aid in the development of United States trade policy. The advisory committees perform various consultative and review functions pursuant to the Trade Act of 1974, 19 U.S.C. § 2155. The USTR has primary responsibility for the administration and composition of the advisory committees.
 
 See
 
 19 U.S.C. § 2155(c)(1) & (2).
 

 On May 23, 1994, the USTR published a notice in the Federal Register closing to the public all meetings of the advisory committees from March 1, 1994 to March 1, 1996, pursuant to 19 U.S.C. § 2155(f)(2).
 
 [3]
 

 See
 
 59 Fed.Reg. 26,686 (1994). The notice states that the USTR had determined that “these meetings will be concerned with matters the disclosure of which would seriously compromise the Government’s negotiation objectives or bargaining positions.”
 
 Id.
 
 The USTR has closed all advisory committee meetings for this reason in two-year intervals since at least 1980.
 
 [4]
 

 The plaintiffs filed this action against the USTR seeking declaratory and injunctive relief from the USTR’s closure of the advisory committee meetings from March 1, 1994 to March 1,1996. In particular, plaintiffs argue that the USTR’s “blanket closure” of all advisory committee meetings violates 19 U.S.C. § 2155(f) (Trade Act of 1974), 5 U.S.C. § 706(2)(A) (Administrative Procedure Act), and 5 U.S.CApp. 2 § 10(a)(1), (a)(2) & (d) (Federal Advisory Committee Act).
 

 On March 1, 1996, the USTR’s blanket closure order expired. Since initiation of this action, the USTR has published an identical notice closing all meetings of the advisory committees from March 1, 1996 to March 1, 1998.
 
 See
 
 61 Fed.Reg. 25,720 (1996).
 

 On August 20, 1996, plaintiffs filed an unopposed motion for leave to amend their complaint. Plaintiffs’ amended complaint seeks injunctive and declaratory relief from the USTR’s closure of the advisory committee meetings from March 1,1996 to March 1, 1998, and substitutes Acting USTR Charlene Barshefsky for former USTR Michael Kan-tor as the defendant in this action. As there are no substantive changes to the legal claims of the parties, there is no need to duplicate the motions, evidence, and legal arguments that have been presented to the court thus far in this action. The court grants plaintiffs’ motion to amend their complaint, and proceeds to the dispositive motions of the parties.
 

 II. Discussion
 

 A
 
 Summary Judgment Standard
 

 Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c). As there are no material facts in dispute, the instant case shall be resolved on summary judgment.
 

 B.
 
 Statutory Framework
 

 Four statutes are involved in this case: the Federal Advisory Committee Act, 5 U.S.C.App. 2 (“FACA”); the Trade Act of 1974,19 U.S.C. §§ 2101
 
 et seq.
 
 (“Trade Act”); the Government in the Sunshine Act, 5 U.S.C. § 552b (“Sunshine Act”); and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (“APA”).
 

 FACA was enacted in part to ensure that “the public [is] informed with respect to the
 
 *34
 
 number, purpose, membership, activities, and cost of advisory committees____” 5 U.S.CApp. 2 § 2(b)(5). To further this purpose, FACA provides that all advisory committee meetings shall be open to the public, but authorizes closure of such meetings in accordance with the Sunshine Act.
 
 See 5
 
 U.S.CApp. 2 § 10(a)(1) & (d). The Sunshine Act sets forth ten exemptions to its open meetings requirement.
 
 See
 
 5 U.S.C. § 552b(c). At issue in this case is Exemption 3, which authorizes closure of an agency meeting where the agency “properly determines” that the meeting is likely to
 

 disclose matters specifically exempted from disclosure by statute (other than section 552 of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld____
 

 5 U.S.C. § 552b(c)(3).
 

 The Trade Act overhauled the procedures for setting and negotiating United States trade policy. The Trade Act established the position of the USTR and provided for the creation of numerous committees, including the particular advisory committees at issue in this action.
 
 See
 
 19 U.S.C. §§ 2171(a), 2155(c). The Trade Act made the advisory committees subject to FACA’s open meetings requirement, except
 

 whenever and to the extent it is determined by the President or his designee that such meetings will be concerned with matters the disclosure of which would seriously compromise the development by the United States Government of trade policy, priorities, negotiating objectives or bargaining positions____
 

 19 U.S.C. § 2155(f)(2). The USTR is the President’s designee for making such determinations by virtue of Executive Order No. 11,846, 40 Fed.Reg. 14,291 (1975).
 

 C.
 
 The Trade Act Governs the USTR’s Authority to Close the Advisory Committee Meetings
 

 The threshold question is which statute governs the USTR’s authority to close the advisory committee meetings. The plaintiffs argue that the Sunshine Act, as incorporated in FACA, governs. Under Exemption 3 of the Sunshine Act, the USTR would be required to make a “proper determination” that allowing the advisory committee meetings to remain open to the public would result in the disclosure of confidential matters, the nondisclosure of which is authorized by § 2155(f)(2) of the Trade Act. In order for Exemption 3 to apply, the Trade Act must qualify as a withholding statute under Exemption 3.
 
 See
 
 5 U.S.C. § 552b(c)(3).
 

 The USTR, on the other hand, argues that the Trade Act itself governs her closure authority. Under the Trade Act, the USTR’s “determination” that the advisory committee meetings will concern certain confidential matters exempts the advisory committee meetings from FACA’s open meetings requirement and thus from any exemption analysis under Exemption 3 of the Sunshine Act.
 

 The USTR maintains that Exemption 3 of the Sunshine Act does not control her closure authority because the Trade Act provides a broader, independent exemption from FACA’s open meetings requirement than do the Sunshine Act exemptions that are incorporated in FACA itself.
 
 [5]
 
 The court agrees,
 
 *35
 
 and therefore concludes that the Trade Act governs the USTR’s authority to close the advisory committee meetings.
 

 The Trade Act clearly states that FACA’s open meetings requirement does not apply when the USTR makes a determination that the meetings will concern certain confidential matters.
 
 See
 
 19 U.S.C. § 2155(f)(2). Plaintiffs argue that the USTR’s closure decision must nevertheless conform to Exemption 3 of the Sunshine Act, as incorporated in FACA. This position is untenable. Because the Trade Act explicitly provides an independent exemption from FACA’s open meetings requirement, there is no need for the USTR to claim additional closure authority under Exemption 3 of the Sunshine Act, as incorporated in FACA.
 
 [6]
 

 The independent nature of the USTR’s closure authority under the Trade Act is further evident from the fact that the Trade Act provides for a broader exemption from FACA’s requirements than does FACA itself. FACA permits the President or his designee to invoke a Sunshine Act exemption only to close advisory committee meetings to .the public.
 
 See
 
 5 U.S.C.App. 2 § 10(d). In contrast, the Trade Act not only permits the closure of the advisory committee meetings, but also relieves the USTR of her obligation to make available advisory committee documents and to publish notices of advisory committee meetings.
 
 See
 
 19 U.S.C. § 2155(f)(2). The incongruity of FACA and the Trade Act on this issue suggests that the Trade Act’s exemption provisions were meant to operate independently of the further exemptions provided by FACA itself.
 

 D.
 
 The USTR’s Blanket Closure of the Advisory Committee Meetings Violates the Trade Act and the APA
 

 Plaintiffs claim that even if the USTR has independent authority under the Trade Act to close the advisory committee meetings, as the court concludes she does, the USTR’s blanket closure of all advisory committee meetings from March 1, 1996 to March 1, 1998 exceeds her statutory authority under the Trade Act and is arbitrary and capricious
 
 *36
 
 in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).
 

 The USTR concedes that the extent of her authority to close advisory committee meetings under the Trade Act is subject to judicial review.
 
 See
 
 Defendant’s Reply at 13. The USTR argues, however, that (1) her interpretation of the Trade Act as allowing a blanket closure of advisory committee meetings is a plausible one that deserves deference from the court; and (2) Congress’s intent to permit such closures is manifest from Congress’s long-standing acquiescence to such closures.
 

 1.
 
 Deferring to the USTR’s Interpretation of § 2155(f) is inappropriate
 

 Courts must defer to an agency’s permissible construction of the statute which it administers if the intent of Congress is not clearly expressed through the plain language or legislative history of the statute.
 
 See Chevron U.S.A, Inc. v. NRDC,
 
 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). The
 
 Chevron
 
 doctrine requires the court to undertake a two-step analysis. First, the court must determine whether Congress has directly spoken to the precise question at issue. If Congress has not addressed the precise issue, the court must proceed to step two, the court “defer[s] to the Agency’s interpretation of the statute if it is reasonable and consistent with the statute’s purpose.”
 
 National Medical Enters., Inc. v. Shalala,
 
 43 F.3d 691, 695 (D.C.Cir.. 1995)
 
 (quoting Chemical Mfrs. Ass’n v. EPA,
 
 919 F.2d 158, 162-63 (D.C.Cir.1990)).
 

 The Trade Act is ambiguous as to whether ■the USTR may close all advisory committee meetings with a single blanket closure order. Section 2155(f)(2) merely states that advisory committee meetings may be closed “whenever and to the extent it is determined ... that such meetings” will be concerned with certain confidential matters. The USTR relies on the legislative history of the Trade Act to support her interpretation. In particular, the USTR reads the following language in the Senate Finance Committee Report on the Trade Act as authorizing blanket closures of advisory committee meetings: “It is anticipated that, as the advisory committees begin discussion of U.S. negotiating positions, one determination [by the USTR] could be issued [to close] all future meetings on that subject.” S.Rep. No. 1298, 93d Cong., 2d Sess. 103 (1974),
 
 reprinted in
 
 1974 U.S.C.C.A.N. 7186, 7250.
 

 Plaintiffs read this same language to mean that once an initial determination has been made that a certain issue is confidential under § 2155(f)(2), that determination need not be revisited every time a meeting is scheduled to discuss that same confidential issue. Under plaintiffs’ interpretation, the USTR must know that a meeting will concern previously-determined confidential issues before she may “piggyback on a prior determination of harm.” Plaintiffs’ Opposition Memorandum at 19.
 

 Because both parties’ readings of the legislative history are plausible, and because Congress has not directly spoken to the precise issue raised by this action, the court proceeds to step two of its
 
 Chevron
 
 analysis. The court must defer to the USTR’s interpretation of her authority to close advisory committee meetings provided that her interpretation is reasonable and consistent with the purpose of § 2155(f)(2).
 
 National Medical Enters., Inc.,
 
 43 F.3d at 695. Because the blanket closure is inconsistent with the purpose of § 2155(f)(2), the court declines to defer to the USTR’s interpretation of § 2155(f)(2) and concludes that the USTR’s blanket closure of the advisory committee meetings violates the Trade Act. Furthermore, because the court can discern no reasonable basis for the USTR’s blanket closure order, the court concludes that the order violates the APA.
 

 a.
 
 Violation of the Trade Act
 

 The Trade Act provides that the advisory committees consult the President concerning a broad range of issues affecting United States trade policy.
 
 [7]
 
 Congress clear
 
 *37
 
 ly determined that some, but not all, of the issues to be discussed by the advisory committees would be confidential. Thus, Congress established a presumption that the advisory committee meetings would be open to the public, with an exception for “such meetings” as the President or his designee determines will concern specified confidential matters.
 
 See
 
 19 U.S.C. § 2155(f).
 
 [8]
 

 The USTR premised her blanket closure on her determination that the advisory committee meetings from March 1, 1996 to March 1, 1998, “will be concerned with matters the disclosure of which would seriously compromise the Government’s negotiating objectives or bargaining positions.” 61 Fed. Reg. 25,720 (1996). The USTR offered no evidence that each meeting of 21 advisory committees over the next two years will concern confidential matters as defined in § 2155(f)(2). The USTR’s blanket closure amounts to a declaration that the advisory committees discuss only those matters that are considered confidential under § 2155(f)(2). Such a contention runs counter to the advisory committees’ broad statutory mandate, reverses the presumption of open meetings established in § 2155(f), and is not supported by any evidence offered by the USTR. Therefore, the court concludes that the USTR’s blanket closure of the advisory committee meetings is not authorized by § 2155(f) of the Trade Act.
 

 b.
 
 Violation of the APA
 

 The APA requires the court to set aside agency actions that are “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A). In assessing an agency decision under the APA, the court must “consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.”
 
 Citizens to Preserve Overton Park v. Volpe,
 
 401 U.S. 402, 416, 91 S.Ct. 814, 828-24, 28 L.Ed.2d 136 (1971). “When an agency merely parrots the language of a statute without providing an account of how it reached its results, it has not adequately explained the basis for its decision.”
 
 Dickson v. Secretary of Defense,
 
 68 F.3d 1396, 1405 (D.C.Cir.1995).
 

 As discussed above, the USTR has failed to provide any reasoned basis for her blanket closure of the advisory committee meetings, save a curt repetition of the authorizing language of § 2155(f)(2). As
 
 Dickson
 
 makes clear, such an “explanation” is no explanation at all.
 
 Dickson,
 
 68 F.3d at 1405. Therefore, the USTR has violated the APA by failing to provide an adequate explanation for her closure order and has exceeded her closure authority under the Trade Act.
 

 Because the USTR’s blanket closure of the advisory committee meetings violates the Trade Act and the APA, the court vacates the USTR’s closure order published at 61 Fed.Reg. 25,720 (1996).
 
 [9]
 

 2.
 
 Inferring Congressional Ratification of the USTR’s Blanket Closure Authority is Inappropriate
 

 The USTR urges the court to infer congressional ratification of her interpretation of § 2155(f) based on Congress’s failure to modify the USTR’s long-standing blanket closure policy despite numerous opportunities to do so. The USTR has closed all advisory committee meetings since at least
 
 *38
 
 1980.
 
 See supra,
 
 note 4. Despite having amended § 2155 four times since its enactment, Congress has failed to specifically prohibit the USTR’s blanket closure policy.
 
 [10]
 

 The cases that the USTR cites to support her argument variously refer to congressional silence as providing “persuasive evidence,” “a presumption,” and “some persuasive weight” for the conclusion that Congress has impliedly ratified an agency’s statutory interpretation.
 
 [11]
 
 Instructively, none of the courts referenced by the USTR relied solely on Congress’s silence to infer congressional ratification. In fact, nearly all of the cases cited by the USTR inferred congressional ratification only where the administrative interpretation of the statute at issue was “shown clearly to have been brought to the attention of Congress and not changed by it.”
 
 Kay v. FCC,
 
 443 F.2d 638, 646-47 (D.C.Cir.1970).
 
 [12]
 
 In the instant case, the USTR provides no evidence that Congress was specifically aware of the USTR’s blanket closure orders yet failed to amend § 2155(f) to overturn the USTR’s interpretation of her closure authority.
 

 The Supreme Court has cautioned courts to be “extremely hesitant to presume general congressional awareness of [an agency’s] construction [of a statute] based only upon a few isolated statements in the thousands of pages of legislative documents.”
 
 SEC v. Sloan,
 
 436 U.S. 103, 121, 98 S.Ct. 1702, 1713, 56 L.Ed.2d 148 (1978). In
 
 Sloan,
 
 the Court declined to presume general congressional acquiescence in a 34-year-old practice of the Securities and Exchange Commission, despite the fact that the Senate committee having jurisdiction over the SEC’s activities had long expressed approval of the practice. The Court was persuaded not to infer congressional ratification because the practice at issue “not only [was] at odds with the language of the section in question and the pattern of the statute taken as a whole, but also [was] extremely far reaching in terms of the virtually untrammeled and unreviewable power it would vest in a regulatory agency.”
 
 Id.
 

 The court finds the reasoning of
 
 Sloan
 
 persuasive. Implying congressional ratification of the USTR’s blanket closure authority is inappropriate in the instant case because it is not clear that the biannual notices published by the USTR in the Federal Register actually made Congress aware of the USTR’s interpretation of § 2155(f). Furthermore, the USTR’s interpretation of § 2155(f) is inconsistent with the structure of the Trade Act and would effectively place her closure determinations beyond public scrutiny and judicial review.
 

 III. Conclusion
 

 For the reasons stated above, the court, in the accompanying Order, denies defendant’s motion to dismiss and grants plaintiffs’ motion for summary judgment. The court vacates the USTR’s closure order published at 61 Fed.Reg. 25,720 (1996).
 

 ORDER
 

 Denying Defendant’s Motion to Dismiss and Granting Plaintiffs’ Motion to Amend their Complaint and Motion for Summary Judgment
 

 For the reasons stated in the accompanying Memorandum Opinion, it is, on this 19 day of September 1996,
 

 
 *39
 
 ORDERED that defendant’s motion to dismiss be and hereby is denied; and it is
 

 FURTHER ORDERED that plaintiffs’ motion for summary judgment be and hereby is granted; and it is
 

 ORDERED that the USTR’s order closing all Industry Policy, Sectoral, and Functional Advisory Committees’ meetings from March 1, 1996, to March 1, 1998, published at 61 Fed.Reg. 25,720 (1996), be and hereby is vacated.
 

 SO ORDERED.
 

 [2]
 

 . As the court has considered the legal arguments and evidence submitted by both parties pursuant to plaintiffs’ motion for summary judgment, the court treats defendant’s motion to dismiss as a motion for summary judgment.
 
 See
 
 Fed.R.Civ.P. 12(b).
 

 [3]
 

 . Section 2155 creates a presumption that the advisory committee meetings will be open to the public, but allows for closure of such meetings that the USTR determines are likely to disclose certain specified confidential information. The USTR is the President’s designee for making closure determinations by virtue of Exec.Order No. 11,846, 40 Fed.Reg. 14,291 (1975).
 

 [4]
 

 .
 
 See
 
 57 Fed.Reg. 9597 (1992); 55 Fed.Reg. 18,-693 (1990); 53 Fed.Reg. 9721 (1988); 51 Fed. Reg. 15,431 (1986); 49 Fed.Reg. 19,753 (1984); 47 Fed.Reg. 18,696 (1982); 45 Fed.Reg. 43,516 (1980).
 

 [5]
 

 . The USTR also argues that the Sunshine Act is inapplicable because (1) the Trade Act was enacted some 19 months prior to the Sunshine Act; and (2) the Trade Act is not a withholding statute under Exemption 3 of the Sunshine Act. The court is persuaded by neither of these arguments. First, the Supreme Court has applied Exemption 3 of the Freedom of Information Act ("FOIA”), which is identical to Exemption 3 of the Sunshine Act, to statutes predating FOIA.
 
 See, e.g., CIA v. Sims,
 
 471 U.S. 159, 167, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985) (applying Exemption 3 of FOIA to National Security Act of 1947);
 
 Baldrige v. Shapiro,
 
 455 U.S. 345, 354-55, 102 S.Ct. 1103, 1109-10, 71 L.Ed.2d 199 (1982) (applying Exemption 3 of FOIA to Census Act provision enacted in 1929). Likewise, the D.C.Circuit has applied provisions of the Sunshine Act to statutes predating the Sunshine Act.
 
 See Common Cause v. NRC,
 
 674 F.2d 921, 930-31 (D.C.Cir.1982) (applying Sunshine Act to the Budget and Accounting Act of 1921, but finding Exemption 3 inapplicable on other grounds);
 
 see also Retired R.R. Workers v. United States R.R. Retirement Bd.,
 
 830 F.2d 331, 333 (D.C.Cir.1987) (noting that
 
 *35
 
 the very difficulty of FOIA Exemption 3 cases is applying the exemption to. "the hundreds of other statutes written prior to and after FOIA”).
 

 Second, Exemption 3 of the Sunshine Act, as incorporated in FACA, provides for the closure of agency meetings upon a proper determination that the meetings are likely to disclose matters exempted from disclosure under statutes that establish "particular criteria for withholding or refer[] to particular types of matters to be withheld.” 5 U.S.C. § 552b(c)(3)(B). The Trade Act permits the closure of meetings "concerned with matters the disclosure of which would seriously compromise the development ... of trade policy, priorities, negotiating objectives or bargaining positions with respect to matters referred to in subsection (a) of this section____” 19 U.S.C. § 2155(f)(2). The Trade Act clearly limits the closure discretion of the USTR and "refers to particular types of matters” on which to base a closure decision, and thus qualifies as a withholding statute under Exemption 3.
 
 See CIA v. Sims,
 
 471 U.S. 159, 167, 105 S.Ct. 1881, 1887, 85 L.Ed.2d 173 (1985) (holding statute that authorized withholding information to protect “intelligence sources and methods” to be an Exemption 3 withholding statute);
 
 Mudge, Rose, Guthrie, Alexander & Ferdon v. ITC,
 
 846 F.2d 1527, 1530-31 (D.C.Cir.1988) (holding statute that authorized withholding of "proprietary” information to be an Exemption 3 withholding statute).
 

 [6]
 

 . Plaintiffs apparently contend that the USTR has no independent closure authority under the Trade Act, but rather must always conform to the requirements of the Sunshine Act. This argument erroneously assumes that the Sunshine Act is independently applicable to the USTR, instead of applicable to the USTR’s closure authority specifically by way of FACA.
 

 The Sunshine Act applies only to agencies “headed by a collegial body composed of two or more individual members.” 5 U.S.C. § 552b(a)(l). The Office of the USTR is headed by a single individual, namely the USTR.
 
 See
 
 19 U.S.C. § 2171(b)(1). Therefore, the Sunshine Act does not independently apply to the USTR.
 
 See, e.g., Rushforth v. Council of Economic Advisers,
 
 762 F.2d 1038, 1043-44 (D.C.Cir.1985) (holding Sunshine Act inapplicable absent statutory requirement that agency be run collegially);
 
 Symons v. Chrysler Corp. Loan Guar. Bd.,
 
 670 F.2d 238, 243 (D.C.Cir. 1981) ("The [Sunshine] Act clearly does not apply to agencies headed by a single individual....”);
 
 Nichols v. Reno,
 
 931 F.Supp. 748, 752 (D.Colo.) (holding Sunshine Act inapplicable to Department of Justice because headed by Attorney General);
 
 Parravano v. Babbitt,
 
 837 F.Supp. 1034, 1048 (N.D.Cal.1993),
 
 affd,
 
 70 F.3d 539 (9th Cir.1995),
 
 cert. denied,
 
 - U.S. -, 116 S.Ct. 2546, 135 L.Ed.2d 1066 (1996) (holding Sunshine Act inapplicable to Department of Commerce because headed by Secretary of Commerce).
 

 [7]
 

 . The Trade Act provides that the advisory committees are to provide policy advice, technical advice and information, and advice on the overall current trade policy of the United States. The consultations shall include, but are not limited to, the following elements of such policy:
 

 
 *37
 
 (A) The principal multilateral and bilateral trade negotiating objectives and the progress being made toward their achievement.
 

 (B) The implementation, operation, and effectiveness of recently concluded multilateral and bilateral trade agreements and resolution of trade disputes.
 

 (C) The actions taken under the trade laws of the United States and the effectiveness of such actions in achieving trade policy objectives.
 

 (D) Important developments in other areas of trade for which there must be developed a proper policy response.
 

 19 U.S.C. § 2155(a)(2), (c)(1), (d).
 

 [8]
 

 . The legislative history on which the USTR relies to support her blanket closure authority confirms Congress’s understanding that some, but not all, issues before the advisory committees would be confidential under § 2155(f)(2): "It is anticipated that,
 
 as the advisory committees begin discussion of U.S. negotiating positions,
 
 one determination could be issued for all future meetings
 
 on that subject."
 
 1974 U.S.C.C.A.N. at 7250 (emphasis added).
 

 [9]
 

 . The court notes that the USTR is, of course, free to close advisory committee meetings on a meeting-by-meeting basis, as contemplated by and provided for in § 2155(f).
 

 [10]
 

 . The following statutes have amended § 2155 of the Trade Act: The Trade Agreements Act of 1979, Pub.L. No. 96-39, Title XI, § 1103 (July 26, 1979); The Trade and Tariff Act of 1984, Pub.L. No. 98-573, Title III, § 306(c)(2)(B) (Oct. 30, 1984); Pub.L. No. 99-514, Title XVIII, § 1887(a)(2) (Oct. 22, 1986); The Omnibus Trade and Tariff Act, Pub.L. No. 100-418 (Aug. 23, 1988).
 

 [11]
 

 .
 
 See Lindahl v. OPM,
 
 470 U.S. 768, 782 n. 15, 105 S.Ct. 1620, 1629 n. 15, 84 L.Ed.2d 674 (1985) (“presumption”);
 
 Commodity Futures Trading Comm'n v. Schor,
 
 478 U.S. 833, 845-46, 106 S.Ct. 3245, 3253-54, 92 L.Ed.2d 675 (1986) (“persuasive evidence”);
 
 CBS v. FCC,
 
 453 U.S. 367, 385, 101 S.Ct. 2813, 2825, 69 L.Ed.2d 706 (1981) (same);
 
 Kay v. FCC,
 
 443 F.2d 638, 646-47 (D.C.Cir.1970) ("some persuasive weight”).
 

 [12]
 

 .
 
 See, e.g., Lindahl,
 
 470 U.S. at 782, 105 S.Ct. at 1629 ("legislative history ... demonstrates that Congress was indeed well aware of the [judicial interpretation]");
 
 Commodity Futures Trading Comm'n,
 
 478 U.S. at 846, 106 S.Ct. at 3254 (“Congress explicitly affirmed the agency’s [interpretation]”);
 
 CBS,
 
 453 U.S. at 367, 101 S.Ct. at 2813 (Congress made aware of agency interpretation through hearings).