**Terry Lynn NICHOLS, Plaintiff,**

v.

**Janet RENO, Attorney General of the United States, and Patrick M. Ryan, United States Attorney for the Western District of Oklahoma, Defendants.**

Civil Action No. 96–M–606.

United States District Court,
D. Colorado.

May 29, 1996.

---

Michael Tigar, Ronald G. Woods, N. Reid Neureiter, Denver, CO, for plaintiff.

Robert A. Bradford, U.S. Attorney's Office, Oklahoma City, OK, Jessica A. Lerner, Vince M. Garvey, U.S. Department of Justice, Civil Division, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL FOR LACK OF JURISDICTION

MATSCH, Chief Judge.

This civil action was initiated by a complaint filed in the United States District Court for the Western District of Oklahoma on November 20, 1995, by Terry Lynn Nichols, who was then incarcerated at the Federal Correctional Institution, El Reno, Oklahoma. Mr. Nichols is a defendant in a criminal proceeding now pending in this court as Criminal Action No. 96–CR–68. Because the criminal case was transferred to this court on a motion for change of venue, this civil action was also transferred pursuant to 28 U.S.C. § 1404(a) by an order entered on March 14, 1996.

The relief sought by Mr. Nichols in his complaint is an order declaring that the Notice of Intention to Seek the Death Penalty As to Defendant Terry Lynn Nichols ("Notice") filed by defendant Patrick M. Ryan as United States Attorney for the Western District of Oklahoma in the criminal case on October 20, 1995, is void and of no effect. The plaintiff also asks for an order prohibiting the defendants from filing a new notice

without compliance with his interpretation of applicable regulations, statutes and constitutional provisions.

Mr. Nichols alleges jurisdiction for this civil action under 28 U.S.C. §§ 1331 and 1361. The federal questions raised are claims that the defendants, in their official capacities as Attorney General and United States Attorney, violated the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.,* the Open Meetings Act, 5 U.S.C. § 552b and the Due Process Clause of the Fifth Amendment by the manner of filing of that Notice. In particular, the plaintiff asserts that defendant Reno was not an "impartial decider" because she had publicly announced an intention to seek the death penalty before any charges were filed against Terry Nichols; that both defendants denied the plaintiff access to any record information forming the basis for the decision to file the Notice; that the defendants conducted proceedings in secret; that the decision is without basis in fact and law and that they failed to give adequate notice of the issues and evidence on which they would rely.

The defendants filed a motion to dismiss on January 12, 1996, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted.

The Notice was filed pursuant to 18 U.S.C. § 3593(a). That statute reads, in part, as follows:

> If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified ... the attorney shall, a reasonable time before the trial ... sign and file with the court, and serve on the defendant, a notice—
>
> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified ... and that the government will seek the sentence of death; and
>
> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.
>
> \* \* \* \* \* \*
>
> The court may permit the attorney for the government to amend the notice upon a showing of good cause.

The statute provides that if a defendant is found guilty of an offense for which death is a possible penalty and such a notice has been filed, a penalty hearing must be conducted at which the defendant may present any "information" relevant to a mitigating factor and the government "may present any information relevant to an aggravating factor for which notice has been provided under subsection (a)." 18 U.S.C. § 3593(c).

The "attorney for the government" referred to in the statute is the United States Attorney, appointed for each judicial district by the President pursuant to 28 U.S.C. § 541 with the statutory duty to "prosecute for all offenses against the United States" within his district. 28 U.S.C. § 547. The Attorney General of the United States, appointed by the President under 28 U.S.C. § 503, is the head of the Department of Justice, an executive department of the United States at the seat of Government. 28 U.S.C. § 501. The Attorney General has specific statutory authority to supervise all litigation in which the United States is a party and to direct all United States Attorneys, and their assistants, including special attorneys appointed under Section 543 to assist United States Attorneys, in the discharge of their duties. 28 U.S.C. § 519.

Attorney General Reno, like her predecessors, exercises that supervisory responsibility, in part, through internal policy directives collected in the United States Attorneys' Manual ("Manual"). On January 27, 1995, following enactment of the Federal Death Penalty Act of 1994, the Manual was amended to require the United States Attorneys to obtain prior written authorization from the Attorney General before seeking the death penalty in any case. To request such approval, a United States Attorney must follow a departmental procedure which has come to be called the "Death Penalty Protocol." The Protocol requires a recommendation by a special committee of Justice Department offi-

cials appointed by the Attorney General. Before submitting his recommendation to that committee, the United States Attorney must give counsel for the defendant a reasonable opportunity to present mitigating factors for the U.S. Attorney's consideration and defendant's counsel must be afforded an opportunity to submit to the committee, orally or in writing, a statement of reasons why the death penalty should not be sought. The published Protocol includes a policy statement that the United States Attorney, the committee and the Attorney General may consider "any legitimate law enforcement or prosecutorial reason which weighs either for or against seeking the death penalty." *Manual* § 9–10.000(G).

In the papers filed supporting and opposing the defendants' motion and at oral argument, counsel agreed on the following facts: On July 11, 1995, defendant Ryan wrote a letter to Michael E. Tigar, counsel for Mr. Nichols, inviting an oral or written presentation of any facts for consideration in making the penalty recommendation. In his response letter dated July 20, 1995, Mr. Tigar requested that Mr. Ryan recuse himself from the decision making process and asserted a failure to follow requirements of the Administrative Procedure Act and procedural due process. Counsel also objected to any participation by General Reno because she had made a prior public announcement that the government would seek the death penalty against those responsible for the bombing of the Murrah Federal Building. Mr. Tigar also made oral presentations to Mr. Ryan on July 31, 1995, and to the Justice Department committee on September 6, 1995. The indictment was returned on August 10, 1995, and the Notice was filed on October 20, 1995.

On March 8, 1996, the defendants moved for a protective order denying the plaintiff's request for production of documents, served on February 8, 1996, and asked for a stay of all discovery until resolution of the motion to dismiss. That motion was heard with the motion to dismiss on April 9, 1996. The plaintiff contends that he is entitled to copies of any reports or recommendation made by Mr. Ryan, including all supporting material, and copies of any reports or recommendations by the Department of Justice committee, or other personnel concerning the decision to authorize seeking the death penalty against Terry Nichols.

■ The Administrative Procedure Act excludes judicial review of any action or decision "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The prosecutorial discretion to make charging decisions has repeatedly and consistently been held to be presumptively unreviewable by the courts. See comment in *Heckler v. Chaney,* 470 U.S. 821, 832, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985) and holdings in *United States v. Robertson,* 45 F.3d 1423, 1437–38 (10th Cir.), cert. denied, —— U.S. ——, 116 S.Ct. 133, 133 L.Ed.2d 81 (1995); *United States v. Zabawa,* 39 F.3d 279, 284 (10th Cir.1994).

■ The plaintiff does not dispute that presumption but contends that the Attorney General has restricted such discretion by the adoption of the Protocol. Agency decisions have been reversed for the failure to follow procedures of the agency. *United States ex rel Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (deportation decision of Board of Immigration Appeals); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (dismissal of State Department employee); *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) (dismissal of employee by Secretary of Interior); *Yellin v. United States,* 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963) (criminal contempt initiated by Congressional committee) and *Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) (Bureau of Indian Affairs denial of general assistance benefits). As discussed in the plaintiff's brief, these cases are premised on the fair play concept embodied in the principle that due process of law is required for governmental actions that affect the rights of individuals. The agency decisions were adjudications and the agency regulations both created the interest to be protected and defined the process due to protect it.

The applicability of this line of cases depends upon a finding that the Protocol provides Terry Nichols with some protectable interest. It does not. The Manual expressly disclaims any intention to create any judicial-

ly enforceable substantive or procedural rights in any party in any civil or criminal matter. The courts have consistently refused to recognize any such rights with respect to many of the policies and practices prescribed in the Manual. The Tenth Circuit Court of Appeals followed the other circuits in holding that a defendant in a criminal case could not enforce the "Petite policy" concerning successive prosecutions in *United States v. Thompson,* 579 F.2d 1184, 1188–89 (10th Cir.) (*en banc* ), cert. denied, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978) and in *United States v. Fritz,* 580 F.2d 370, 375 (10th Cir.) (*en banc* ), cert. denied, 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978).

That line of cases was persuasive to Chief Judge McAvoy in dismissing a civil action challenging a notice of intention to seek the death penalty upon conviction of a charge of continuing criminal enterprise under 21 U.S.C. § 848(e)(1)(A) in *Walker and Diaz v. Reno,* 925 F.Supp. 124 (N.D.N.Y.1995). Mr. Nichols' counsel seeks to distinguish that holding from this case because the court there noted that there was no contention that the Attorney General had failed to follow the Protocol whereas the claim here is that she failed to follow even the minimum procedural protections in the Manual by her prejudgment of the death penalty issue in her public announcement made before any suspects had been named or arrested. Indeed, both Mr. Nichols and his co-defendant, Timothy McVeigh, have moved in the criminal case to strike the Notice and to disqualify the Attorney General from participating in the preparation of any new notice because of that public statement by General Reno and a publicly stated commitment to seek the death penalty made by the President of the United States at the beginning of the government's investigation.

■ The suggested distinction between these cases depends upon the applicability of the principle that fundamental fairness requires a decision maker to address the question before her with an open mind free from any preconceptions concerning the outcome. That is, of course, a root requirement for any judicial proceeding and it is equally essential in any adjudicative or quasi-adjudicative action by officers of government. By definition a prosecutorial decision is not adjudicative in nature. It is a determination to seek a particular result in an adjudication conducted in a judicial forum with the full protection of the adversarial system of justice. The life of a defendant named in a notice of intention to seek the death penalty is protected by the trial process with the jurors making the final decision in the exercise of their authority as the conscience of the community.

■ The death penalty statute gives the prosecutorial discretion to the United States Attorney. The only legislative guidance is that he shall consider whether the "circumstances of the offense" justifies a sentence of death. There is no other direction. Thus, absent the Protocol, Mr. Ryan had the statutory authority to file the notice as soon as he believed that there was sufficient evidence to show that the explosion on April 19, 1995, was caused by an intentional bombing.

■ There is some suggestion that because General Reno advised persons in Congress that she would exercise her supervisory authority over United States Attorneys to avoid abusive or invidiously discriminatory prosecutions the Protocol is an implied provision of the statute. That argument is rejected. There is no ambiguity in the statutory language justifying reverting to such scant legislative history to determine the intent of Congress.

■ It is also suggested that the constitutionality of the federal death penalty requires such a procedure. The arguments against the constitutional validity have been made by both defendants in their motions filed in the criminal case and will be decided in that context where the adequacy of the filed Notice is in question. This proceeding is a challenge to the process followed in the filing of the Notice and those questions of validity are not procedurally appropriate here.

■ There has been no factual dispute that counsel for Mr. Nichols had the opportunity to make presentations to Mr. Ryan and to the committee to present reasons for not seeking the death penalty in the criminal case. The procedures of the Protocol were

followed. As noted earlier, the charge of bias based solely on the public statements of the President and the Attorney General in the immediate aftermath of the explosion is legally insufficient to support a constitutional challenge to the Notice.

■ The Sunshine Act requiring open meetings by agencies "headed by a collegial body composed of two or more individual members," 5 U.S.C. § 552b(a)(1), is not applicable to the Department of Justice. As previously observed, the authority of the Department of Justice is vested in the Attorney General.

Upon the foregoing, it is

ORDERED that the defendants' motions to dismiss are granted and this civil action is dismissed with prejudice.