**UNITED STATES of America, Plaintiff,**

**v.**

**Timothy James McVEIGH and Terry Lynn Nichols, Defendants.**

**Criminal Action No. 96–CR–68–M.**

United States District Court,
D. Colorado.

Sept. 25, 1996.

Patrick Ryan, U.S. Attorney for the Western District of Oklahoma, Oklahoma City, OK, Joseph Hartzler, Special Assistant U.S. Attorney Assigned from S.D. Illinois, Denver, CO, for plaintiff.

Stephen Jones, Richard H. Burr, III, Robert Nigh, Jr., Jones, Wyatt & Roberts, Enid, OK, Jeralyn E. Merritt, Denver, CO, for defendant McVeigh.

Michael Tigar, Ronald G. Woods, N. Reid Neureiter, Denver, CO, for defendant Nichols.

MEMORANDUM OPINION AND ORDER
ON MOTIONS ADDRESSED TO
DEATH PENALTY NOTICE

MATSCH, Chief Judge.

This memorandum opinion addresses the issues raised in the following pleadings:

Docket entry 144 Motion to *Disqualify* Attorney General and All other Officers and Employees of the Department of Justice from Participating in Decision Whether to Seek the Death Penalty, and to *Preclude* Seeking the Death Penalty Until a Lawful Prosecutorial Decision Can Be Made Whether to Seek It. (McVeigh)

Docket entry 145 Memorandum of Law in Support of Motion to *Disqualify* Attorney General and All other Officers and Employees of the Department of Justice from Participating in Decision Whether to Seek the Death Penalty, and to *Preclude* Seeking the Death Penalty Until a Lawful Prosecutorial Decision Can Be Made Whether to Seek It. (McVeigh)

Docket entry 182 Brief of the United States in Opposition to Motion to Disqualify the Attorney General and All Officers of the Department of Justice and to Preclude the Government from Seeking the Death Penalty.

Docket entry 210 Reply Brief of Defendant Timothy McVeigh in Support of Motion to Disqualify Attorney General and All other Officers and Employees of the Department of Justice from Participating in Decision Whether to Seek the Death Penalty, and to Preclude Seeking the Death Penalty Until a Lawful Prosecutorial Decision Can Be Made Whether to Seek It.

Docket entry 489 Notice of Intention to Seek the Death Penalty as to Defendant Timothy James McVeigh

Docket entry 490 Notice of Intention to Seek the Death Penalty as to Defendant Terry Lynn Nichols

Docket entry 637 Motion to Strike Notice of Intention to Seek the Death Penalty as to Defendant Timothy James McVeigh

Docket entry 638 Memorandum in Support of Motion to Strike Notice of Intention to Seek the Death Penalty as to Defendant Timothy James McVeigh

Docket entry 639 Motion to Strike Notice of Intention to Seek the Death Penalty as to Defendant Terry Lynn Nichols, and Memorandum in Support Thereof; Oral Argument Requested

Docket entry 742 Brief of the United States in Opposition to Defendants' Motions to Strike to the Notices of Intent to Seek the Death Penalty

Docket entry 801 Reply Memorandum Concerning Motion to Strike the Death Penalty (Nichols)

Docket entry 843 Reply Brief of Defendant Timothy James McVeigh in Support of Motion to Strike the Notice of Intention to Seek the Death Penalty

Docket entry 987 Notice Re Motion to Strike Notice of Intention to Seek Death Penalty as to Defendant Timothy James McVeigh (Nichols)

Docket entry 1182 Motion for Leave of court to File Supplemental Brief; Supplemental Brief In Support of Motion to Strike Notice of Intention to Seek the Death Penalty as to Defendant Timothy James McVeigh

Docket entry 1195 Notice Re: Supplemental Brief in Support of Motion to Strike Notice of Intention to Seek the Death Penalty as to Defendant Timothy James McVeigh (Nichols)

On October 20, 1995, the government filed a Notice of Intention to Seek the Death Penalty as to defendant Timothy James McVeigh, and an identical notice as to defendant Terry Lynn Nichols. These notices,

under 18 U.S.C. § 3593(a), invoke the provisions of the Federal Death Penalty Act, ("Act") 18 U.S.C. §§ 3591–3596.

Before the notices were filed, defendant Timothy McVeigh moved to disqualify the Attorney General and all other officers and employees of the Department of Justice from any participation in the process of deciding whether to seek the death penalty in this case. That motion, filed July 25, 1995, was fully briefed but not decided before the reassignment of this case and the change of venue. The defendant Terry Nichols joined in the motion. The particular relief sought in the motion to disqualify is now moot because the notices have been filed. The contentions made must be considered, however, because they also affect the validity of these notices as challenged by the defendants' motions to strike.

Mr. Nichols filed a separate civil action in the Western District of Oklahoma, *Terry Lynn Nichols v. Janet Reno*, 931 F.Supp. 748 (D.Colo.1996) (formerly CIV–95–1824W), which was transferred to this court. The complaint in that case, brought under the Administrative Procedures Act, made some of the same contentions contained in Mr. McVeigh's motion to disqualify. This court granted the defendants' motion to dismiss the civil action in a memorandum opinion and order entered on May 29, 1996. *Nichols v. Reno*, 931 F.Supp. 748 (D.Colo.1996). Although the dismissal resulted from the conclusion that the complaint did not state a claim for relief within the court's jurisdiction, the reasoning is applicable here on the merits of Mr. McVeigh's motion to disqualify.

■ The premise of the motion is that the Attorney General made the decision to seek the death penalty before any suspect was even identified. On April 19, 1995, shortly after the explosion in Oklahoma City giving rise to the charges in this case, General Reno publicly announced that the death penalty would be sought in any prosecution for bombing the Murrah Building. The President repeated that public pledge two days later, shortly after Timothy McVeigh was identified as a suspect. Later on that day, April 21, when Mr. McVeigh appeared before Magistrate Judge Ronald L. Howland in Oklahoma City, an Assistant United States Attorney advised the court that the maximum penalty on the charge of violation of 18 U.S.C. § 844(f) was death.

In the memorandum opinion and order deciding the civil case, the court reviewed the "Death Penalty Protocol" published in the United States Attorneys' Manual, prescribing a procedure for prosecutors to follow to obtain authority to seek the death penalty in any criminal case. Patrick Ryan, United States Attorney for the Western District of Oklahoma, wrote a letter to Timothy McVeigh's attorney, Stephen Jones, inviting his participation in the Protocol process. Mr. Jones refused any participation, claiming that it would be futile because these public statements showed that the decision had already been made. Despite the refusal, the Department of Justice procedure was followed and the formal notices of intention to seek the death penalty were approved according to the Protocol. Counsel for Terry Nichols did submit statements pursuant to the Protocol, as described in the civil case opinion. Counsel for both defendants have asked for discovery of the Department of Justice internal documents relevant to the notices to support their motions. That request is denied. Such documents are not pertinent to the McVeigh motion to disqualify or to the defendants' motions to strike the death penalty notices because the administrative decision to file them is not judicially reviewable.

■ As this court ruled in the civil action, the decision to seek the death penalty under the Act is a matter of prosecutorial discretion. The Protocol did not create any individual right or entitlement subject to the due process protections applicable to an adjudicative or quasi-adjudicative governmental action. The Act expressly provides that the attorney for the government shall file and serve the death penalty notice if he believes that the "circumstances of the offense" are such that a sentence of death is justified. § 3593(a). There is no requirement that the prosecutor consider any other matters, including any mitigating factors concerning the offense or the character and circumstances of a particular defendant. The decision of a

jury whether to recommend a sentence of death is made only after a full hearing and consideration of aggravating and mitigating factors provided by information submitted pursuant to the adversary process. § 3593(b)–(e). The constitutional protections of the life and liberty of a defendant are provided by the sentencing hearing following trial of the charges in the indictment. The issuance of these notices is essentially a prosecutor's charging decision. The McVeigh motion to disqualify the Attorney General and Department of Justice officials is denied on the merits.

In their motions to strike the death penalty notices the defendants assert that the notices filed on October 20, 1995, violate the Fifth and Eighth Amendments. The defendants claim that the prosecution has exposed them to the possibility of capital punishment as a result of arbitrary and irrational decisions. Nothing has been submitted to show or suggest that the notices were filed because of any discriminatory motive, invidious classification or improper motivation as to either defendant. Those are the only grounds warranting judicial interdiction of such action by an officer of the executive branch of government. Accordingly, there is no merit to this contention.

■ Additionally, the defendants suggest that Fed.R.Crim.P. 7 is applicable to these notices and that they fail to include adequate statements of the essential facts relied on as required by subsection (c) of the rule. Assuming that the rule fairly states the requirement of adequate notice for procedural due process and is, therefore, applicable to the notices, there is no violation when the notices are read in conjunction with the allegations of the indictment. The indictment contains such detailed statements of what the prosecution intends to prove that these defendants previously challenged its language as being inflammatory and containing prejudicial surplusage. Taken together, the indictment and notices give the defendants adequate information as to what the government will rely on at trial and sentencing. Additional notice has been given in the extensive discovery provided by the prosecutors.

The defense motions claim that the Act is facially unconstitutional in several aspects. The broadest argument is that under all circumstances the death penalty is cruel and unusual punishment prohibited by the Eighth Amendment. That argument is foreclosed by the decisions of the Supreme Court. *McCleskey v. Kemp,* 481 U.S. 279, 300–303, 107 S.Ct. 1756, 1771–1773, 95 L.Ed.2d 262 (1987).

The defendants claim that the government's notice violates the Fifth Amendment grand jury requirement. This position was rejected in the Memorandum Opinion and Order filed on September 9, 1996. *United States v. McVeigh and Nichols,* 940 F.Supp. 1571, 1580–82 (D.Colo.1996).

■ The defendants argue that the Act does not permit meaningful appellate review because Congress provided in § 3595 that a sentence of death will be reviewed upon appeal only if the defendant files a notice of appeal within the time specified for filing any other notice of appeal. There is no automatic appellate review as in some of the state statutes which have been validated by the Supreme Court since *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The defendants say that conditioning sentence review upon a request by the defendant is an invalid limitation, suggesting that a defendant may be unable to decide to appeal because of depression or other mental or emotional infirmity after the sentencing. That contention is highly speculative. While the decision to appeal a conviction and sentence must be made by a defendant, the court has the duty to provide the assistance of counsel who must also be given the authority and means to employ such consultants and advisors, including psychiatrists, upon an appropriate *ex parte* showing of need under 21 U.S.C. § 848(q). Conjecture about a particular defendant's ability to make an informed and rational decision to appeal a sentence is not a basis for invalidating the Act. Adequate resources are ensured to protect against the possibility of the loss of an appeal resulting from such circumstances. Moreover, § 3595 of the Act provides for consolidation of the appeal of the sentence with an appeal of the judgment of conviction

and directs that the case be given priority over all other cases in the appellate court. The full record of pretrial, trial and sentencing proceedings may be presented to the court of appeals.

■ The defendants also assert that the Act improperly imposes a legislative limitation on the scope of review of a death sentence in 18 U.S.C. § 3595(c). That subsection directs the court of appeals to address all substantive and procedural issues raised on the sentence appeal and to consider whether the death sentence "was imposed under the influence of passion, prejudice or any other arbitrary factor and whether the evidence supports the special finding of the existence of an aggravating factor required to be considered under § 3592." It further provides that upon such a determination or upon a conclusion that the proceedings involved any other legal error requiring reversal that was adequately preserved for appeal under the Federal Rules of Criminal Procedure, the case shall be remanded for reconsideration under § 3593 or imposition of a sentence other than death. Section 3595(c)(2)(C) adds the following direction:

> The court of appeals shall not reverse or vacate a sentence of death on account of any error which can be harmless, including any erroneous special finding of an aggravating factor, where the Government establishes beyond a reasonable doubt that the error was harmless.

It is presumed that such a showing by the government would be based on the record for review under § 3595(b).

The defendants claim that because of these restrictions, those who are sentenced to death under this Act are denied equal protection of the law as compared with persons sentenced under other statutes.

The general jurisdiction of the court of appeals is granted in 28 U.S.C. § 1291, providing for appeals from all final decisions of the district courts. Review of sentences other than for the death penalty is under 18 U.S.C. § 3742(a), providing that a defendant may file a notice of appeal for review of a sentence imposed in violation of law, resulting from an incorrect application of the sentencing guidelines, a sentence greater than provided under the applicable guideline range, or, when imposed for an offense for which there is no sentencing guideline, "is plainly unreasonable." Thus, the review provided for a death sentence is actually broader in scope than that for any other sentence.

The harmless error restriction on reversal of any decision is well established. *United States v. Tipton,* 90 F.3d 861, 899–901 (4th Cir.1996). As already noted, a consolidated appeal of conviction and sentence is contemplated by the statute so the court of appeals will have before it any issues which are asserted as error in the trial resulting in the conviction. Additionally, this court is unwilling to speculate as to the approach that the Tenth Circuit Court of Appeals may take with respect to the possible application of the "plain error" doctrine and the scope of appellate review under the Constitution, in spite of any purported limitations in the statute. Reading this statute as an interference with the authority of the court of appeals to correct a fundamental error in a particular type of case would construe it in contradiction of the constitutional doctrine of separation of powers. *Cf. United States v. Bradley,* 880 F.Supp. 271, 283 (M.D.Pa.1994) (construing the Act to avoid constitutional infirmity by reading its provision for appellate review of "arbitrary finding[s]" to allow reversal of a sentence if reversible errors occurred at trial).

■ Defense counsel argue that the death penalty notices are invalid because they include aggravating factors not listed in the statute. The defendants note an inconsistency in the Act in that § 3592(c) lists specific aggravating factors which may be included in the government's notice for homicide crimes under § 3591(a)(2) and then provides that the jury may consider "whether any other aggravating factor for which notice has been given exists." Yet, in § 3591, Congress provided for a sentence of death if "after consideration of the factors set forth in § 3592 ..." it is determined that imposition of a sentence of death is justified. Thus, § 3591 appears to limit the jury to consideration of such of the 15 specific statutory aggravating factors in § 3592(c) as may be listed in the govern-

ment's notice. Additionally, under § 3593(e), to recommend death, all jurors must determine that at least one aggravating factor required to be considered under § 3592(c) has been proved beyond a reasonable doubt and then consider whether all the aggravating factors so proved sufficiently outweigh all the mitigating factors found to exist by a preponderance of the evidence to justify a sentence of death. There is no specific mention of non-statutory aggravating factors in that section. Noteworthy, however, in § 3593(a), the factors for which notice is provided "may include the effect of the offense on the victim and the victim's family," a factor not among those specified in § 3592(c).

Other courts have read the other death penalty statute, 21 U.S.C. § 848(e), to permit inclusion of non-statutory aggravating factors. *United States v. McCullah,* 76 F.3d 1087, 1106–07 (10th Cir.1996). In a recent case, the District Court of Kansas reached the same result under this Act. *United States v. Nguyen,* 928 F.Supp. 1525, 1536–37 (D.Kan.1996). The reasoning of these cases is persuasive on this issue.

■ The defendants assert that if the Act is interpreted to permit non-statutory aggravating factors, it is unconstitutional as a delegation of legislative authority to officers of the executive branch without any guiding policy limiting what the prosecutors may choose to include in their notice. There is some merit to the argument as an abstraction. Both sides cite *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), in support of their respective positions concerning this delegation argument. As noted in an earlier opinion, *United States v. McVeigh and Nichols,* 940 F.Supp. 1571, 1579–80 (D.Colo.1996), the court should not address abstract constitutional questions. There is no merit to the defendants' arguments in the context of a sentencing hearing under § 3593.

While it is true that Congress did not impose policy limitations or give clear guidance to prosecuting attorneys as to what may be included as non-statutory aggravating factors, the sentencing hearing is governed by the court within the adversary process. Accordingly, the validity of particular non-statu-

tory aggravating factors may be litigated and adjudicated before the court, just as is being done in the present motions. It is then the judicial authority of the court within the factual context of particular cases that controls the scope of the sentencing hearing. The guiding principles for judicial determination of the validity of particular non-statutory aggravators is the death penalty jurisprudence developed by the Supreme Court. Thus, the aggravating factors must serve the purpose of selection of the defendant for the special penalty with individual consideration to his character and particular conduct in the offense. *See McCullah,* 76 F.3d at 1106 (noting that non-statutory aggravating factors are guided by the principle of individualized sentencing).

■ Mr. McVeigh also asserts that the addition of non-statutory aggravating factors is barred by the *Ex Post Facto* clause in Art. I, Sec. 9, of the Constitution. The answer to that argument is that the enactment of this statute was a change in sentencing procedure, not a change in the definition of a crime or an increase in the punishment. *Dobbert v. Florida,* 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344 (1977); *Hatch v. Oklahoma,* 58 F.3d 1447, 1463–65 (10th Cir.1995).

■ The Act does not require an appellate review of the proportionality of a death sentence compared with others convicted of the same crime. Recognizing that the Supreme Court held that a proportionality review is not required by the Eighth Amendment in *Pulley v. Harris,* 465 U.S. 37, 43–44, 104 S.Ct. 871, 875–76, 79 L.Ed.2d 29 (1984), the defendants attempt to distinguish that ruling on the ground that the California statute involved in that case did not permit the use of non-statutory aggravating factors. Thus, a proportionality review is urged to be an indispensable requirement to check against the arbitrary imposition of the death penalty if non-statutory aggravating factors are included. This attempted distinction is not persuasive. As discussed later in this opinion, the function of aggravating factors, whether or not statutorily required, is to provide assurance that the jury arrives at a

rational decision, after following an assessment process adequately designed to measure the variables involved in the crime and the circumstances of the perpetrator, to select him as deserving the maximum punishment.

■ Another general challenge to the constitutionality of the Act made by the defendants is directed to § 3593(c) providing for proof of mitigating and aggravating factors by "information" regardless of admissibility under the Federal Rules of Evidence, "except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." Thus, the only explicit standard for exclusion is an adaptation from Fed.R.Evid. 403. The court's discretion is broader in the penalty hearing, however, because under Rule 403 the court may exclude relevant evidence only if its probative value is *substantially* outweighed by such dangers whereas the statute has no such quantitative limitation. Read literally, the substitution of information for evidence in § 3593(c) raises the specter of violations of the Confrontation Clause and other fundamental protections contained in the Fifth and Sixth Amendments. What saves the statute is the fact that the hearing is governed by the trial judge who has considerable discretion in controlling the presentation of the "information" to the jury in both content and form. Congress has no authority to prevent the court from protecting the life and liberty of a defendant by the exercise of its Article III authority to conduct all hearings before it.

The defendants have made the general objection to most of the statutory and nonstatutory aggravating factors in the notices that they are vague and overbroad. Analysis of the merits of this challenge requires some reflection on the purpose and function of aggravating factors in the sentencing scheme established by the Act. That, in turn, requires some restatement of the Court-dictated imperatives for a constitutionally valid sentence to death.

■ The Court was unable to form a plurality to support a single opinion stating why the imposition and carrying out of the death penalty in Georgia and Texas before 1972 constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Four separate opinions were filed in support of the judgment in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), that a sentence to death for murder under a new sentencing scheme adopted by the Georgia legislature was not an unconstitutional punishment. Individual justices have continued to struggle with attempts to articulate their views about the imperatives of a valid procedure in the many subsequent decisions approving and disapproving variations in state laws governing the extreme punishment of death. They have been more clear in stating what is prohibited than what is required. Thus, the penalty of death may not be ordered automatically, arbitrarily, irregularly, randomly, capriciously, wantonly, freakishly, disproportionately or under any procedure that permits discrimination by race, religion, wealth, social position or economic class.

■ To be valid, the procedure must protect against a decision motivated by passion and prejudice. It must guide the jurors to individualized consideration of each defendant. The aggravating factors considered must be objectively provable and rationally related to the criminal conduct in the offenses proven at trial. There can be no limitation on the ability of individual jurors to consider mitigating factors. The jurors must be unanimous if their finding is that death is justified, and the jury must articulate the reasons in a manner enabling meaningful appellate review. What must be clear in the end is that the jury has performed its task of acting as the conscience of the community in making a moral judgment about the worth of a specific life balanced against the societal value of a deserved punishment for a particular crime. *See Arave v. Creech,* 507 U.S. 463, 470–71, 113 S.Ct. 1534, 1540–41, 123 L.Ed.2d 188 (1993); *McCleskey v. Kemp,* 481 U.S. 279, 302–03, 107 S.Ct. 1756, 1772–73, 95 L.Ed.2d 262 (1987); *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980).

Congress has attempted to meet these requirements in two death penalty statutes. The first, the Anti–Drug Abuse Act of 1988, now codified at 21 U.S.C. § 848(e)–(g), provides for the possibility of the death penalty for killings committed while the perpetrators are engaged in certain drug crimes. The second is the Death Penalty Act, applicable to all other offenses for which death has been legislatively prescribed as a possible punishment. §§ 3591–3596. Both statutes require a separate penalty phase hearing to consider aggravating factors identified in a pretrial notice and such mitigating factors as the defendant may introduce at the hearing.

If there are convictions in this case requiring a penalty phase hearing, the jury will proceed in a sequential manner, first determining whether the government proved one of the four intentions described in § 3591(a)(2)(A) through (D). If the jurors are not unanimous in finding that one of these intentions existed, their task is complete and the court will sentence according to the Sentencing Guidelines. If such an intention is found, the jury will then consider whether they are unanimously agreed that at least one of the statutory aggravating factors identified in the government's notice has been proved beyond a reasonable doubt. If such a factor is found, the jury may then consider any other aggravating factors submitted to them, if also proved beyond a reasonable doubt, and each juror will then weigh those factors so proven against such mitigating factors as each individual juror may find to exist by a preponderance of the information presented at the hearing. § 3593(d) & (e). Unanimous specific findings must be made as to aggravating factors and the jury may not return a recommendation that a defendant be sentenced to death unless the jurors are unanimously agreed that such aggravating factor or factors sufficiently outweigh all the mitigating factors found to exist to justify a sentence of death. *Id.*

In effect, a sentence of death may not be imposed for anything other than an intentional killing as defined in § 3591(a)(2), and then only after careful consideration of aggravating and mitigating factors particularized as to each defendant.

The aggravating factors function to focus the jury's attention on the particular facts and circumstances pertinent to each defendant found guilty of an offense punishable by death in the context of mitigating factors unique to him as an individual human being. They serve to assist the jury in distinguishing "those who deserve capital punishment from those who do not...." *Arave v. Creech,* 507 U.S. 463, 474, 113 S.Ct. 1534, 1542, 123 L.Ed.2d 188 (1993). The notice filed by the government gives the defendants the opportunity to prepare for the hearing and provides the court with some frame of reference for ruling on objections to the information offered at the hearing. It describes how the prosecution intends to "channel the sentencer's discretion by 'clear and objective standards' that provide specific and detailed guidance and make rationally reviewable the death sentencing process." *Id.* at 471, 113 S.Ct. at 1540, quoting from *Lewis v. Jeffers,* 497 U.S. 764, 774, 110 S.Ct. 3092, 3099, 111 L.Ed.2d 606 (1990).

The Supreme Court has held that aggravating factors must be in sufficiently clear language to be understandable by the jury. *Tuilaepa v. California,* 512 U.S. 967, ——– ——–, 114 S.Ct. 2630, 2635–36, 129 L.Ed.2d 750 (1994). In considering this issue at this time, it must be recognized that the notices will be given to a jury with additional instructions to assist in further narrowing and defining the terms used and the concepts communicated.

With these general principles in mind, the particular aggravating factors identified in the notices must be considered. The government has given notice of five factors listed as statutory factors under § 3592(c)(1). Each must be examined.

1. That the deaths or injuries resulting in death occurred during the commission of an offense under 18 U.S.C. 33 (destruction of a motor vehicle or a motor vehicle facility), 18 U.S.C. 844(d) (transportation of explosives in interstate commerce for certain purposes), 18 U.S.C. 844(f) (destruction of government property by explosives), 18 U.S.C. 844(i) (destruction of property affecting interstate commerce by explosives),

and 18 U.S.C. 2332a (use of a weapon of mass destruction). See Section 3592(c)(1). Of the five crimes listed, three have not been charged in the indictment. Two—§ 844(f) and § 2332a—are charged in the indictment, although the reference to § 2332a is indefinite in that there are subsections to that section and two of those subsections are charges in counts one and two of the indictment. The defendants correctly observe that § 2332a is not one of the crimes listed in § 3592(c)(1). As the government notes, it is obvious that the reference to § 2339 in the statute with the parenthetical identifier "(use of weapons of mass destruction)" shows a typographical error. The court accepts that position.

■■■ The defendants object to this factor because the introduction of multiple predicate offenses to support it could confuse the jury and lead it to consider each of the enumerated predicate offenses as being separate aggravating factors, thereby unfairly weighting this factor and the calculus. There are appropriate procedural answers to that objection. First, the jury instructions can clearly advise that these offenses are simply multiple means for determining that this single aggravating factor, a killing in the course of another offense, is shown to exist. Second, the jury can be required by a special interrogatory to show unanimity in finding which of the underlying offenses they rely on if an affirmative finding is made with respect to this first aggravating factor.

■■■ Additionally, the defendants object to this factor because two of the offenses referred to entirely duplicate counts of the indictment, while others duplicate various elements of the charged crimes. The government counters that the commission of these enumerated felony offenses narrows the class of death-eligible defendants and fulfills the principle of selectivity. The government correctly asserts that the Supreme Court's opinion in *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), prevents this factor from being stricken on the ground that it fails to narrow the class of defendants that are eligible for the death penalty. The Tenth Circuit applied *Lowenfield* in *United States v. McCullah*, 76 F.3d 1087 (10th Cir.

1996), to uphold the use of an aggravating factor that duplicated charges in the indictment against a narrowing challenge. The court ruled that because the federal death penalty statute in that case, 21 U.S.C. § 848(e), had already narrowed the field of death-eligible defendants, the aggravating factor was not invalid because it failed to further narrow that category. *Id.* at 1107–08. Similarly, the intent requirement of the Act operates in this case to narrow the category of death eligibility for the charged crimes, and thus, this first aggravating factor does not fall under this challenge.

However, with respect to those offenses that entirely repeat a charge in the indictment, there is a problem of duplication that was not raised in either *Lowenfield* or *McCullah*. This problem must be viewed in the context of the weighing procedure required by the Act. In *Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), the Supreme Court discussed the severe effect that inappropriate aggravating factors have in a weighing scheme:

> [T]he difference between a weighing State and a non-weighing State is not one of "semantics" ... but of critical importance. In a nonweighing State, so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty.... But when the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale.

503 U.S. at 231–32, 112 S.Ct. at 1137 (citation omitted).

■■■ Because the Court has held that the weighing process is highly sensitive to the influence of aggravating factors that might unfairly tip the scales in favor of death, the government may not introduce those offenses as aggravating factors that duplicate the crimes charged in the indictment. To allow the jury to weigh as an aggravating factor a crime already proved in a guilty verdict would unfairly skew the

weighing process in favor of death. Accordingly, the offenses under § 844(f) and § 2332a are stricken. As to any charged offense for which a verdict of not guilty is returned, that offense must then be stricken from the notice because permitting the jury to find it as an aggravating factor in a penalty hearing would result in an inconsistent verdict. Those offenses that merely have overlapping elements with the crimes charged in the indictment may be introduced because the penalty jury will not have predetermined the defendant's guilt with respect to all elements of those crimes.

■ The defendants also challenge the inclusion of those offenses under § 3592(c)(1) that are not charged in the indictment. This challenge presents the same issue that is raised in the defendants' objections to the third non-statutory aggravating factor—the commission of the crimes of burglary, robbery and theft to finance and facilitate the underlying crimes charged. The defendants' argument is that due process requires consideration of these other crimes only upon conviction of them. The court agrees and the problem is solved by instructing the jury that they must find each of the essential elements of those uncharged offenses as a part of their finding of the existence of this aggravating factor beyond a reasonable doubt. Adequate instructions will also answer the defendants' objection that this statutory factor violates the Fifth Amendment because it is too vague.

■ 2. That the defendant, in the commission of the offense(s), knowingly created a grave risk of death to one or more persons in addition to the victim(s) of the offense(s). See Section 3592(c)(5).

The defendants in their vagueness objection to this factor point out that no details are alleged and that there is uncertainty with respect to whether an intent to place others at grave risk must be shown. Read in the context of the factual allegations of the indictment, there is no problem here. The government intends to prove that the truck bomb was of such force as to create a risk to persons who were not physically affected by the explosion. The issue is one of scope and

a clarifying instruction may validate this factor.

■ 3. That the defendant committed the offense(s) after substantial planning and premeditation to cause the death of one or more persons and to commit an act of terrorism. See Section 3592(c)(9).

The defendants criticize the word "substantial" as having no definite meaning. In this court's view, substantial is one of those everyday words having a common sense core meaning that jurors will be able to understand. *Tuilaepa*, —— U.S. at ——, 114 S.Ct. at 2636.

■ 4. That various victims were particularly vulnerable due to old age, youth, and infirmity. See Section 3592(c)(11).

There is considerable uncertainty with respect to this factor. In the government's response to these motions, the prosecutors have not identified which of the categories will be relied on to support the allegation. Obviously, from the ages given for the victims listed in count one of the indictment, the children killed in this explosion might be considered vulnerable because of their youth. To rule out this aggravator for vagueness at this time would be a premature determination of its validity. The court must await the evidence, at least at the trial of the counts of the indictment, before determining whether and to what extent a penalty phase jury will be allowed to consider this factor.

■ 5. That the defendant committed the offense(s) against one or more federal public servants who were law enforcement officers, (a) while such victim(s) were engaged in the performance of official duties, (b) because of such victim(s)' performance of official duties, and (c) because of such victim(s)' status as public servants. See Section 3592(c)(14)(D).

Although the defendants again challenge this as vague and overbroad with overlapping categories, the court's principal concern here is with duplication of the crimes charged in the eight murder counts. As noted in the court's previous memorandum opinion and order relating to the facial validity of the indictment, *United States v. McVeigh and Nichols*, 940 F.Supp. 1571 (D.Colo.1996), the government has made clear that for convic-

tion on these counts it will rely on the fact that the victims named in them were law enforcement officers who were killed while engaged in the performance of official duties. To that extent, there is an unwarranted duplication. The notice, however, includes the assertion that these and perhaps other persons were killed *because of* the performance of their official duties and *because of* their status as public servants. Because this factor differs from the crime in the indictment, it is not duplicative. Whether there will be adequate "information" to support this contention will be a matter to be addressed after a penalty phase hearing.

■ The government has included four non-statutory aggravating factors in the notices.

1. That the offense(s) committed by the defendant resulted in multiple deaths of 169 persons.

The defendants object that this duplicates counts one and two in the indictment. While that is true with respect to the allegations that deaths resulted, the government will not be required to prove the specific number of persons whose deaths resulted from criminal acts to obtain convictions. Thus, this non-statutory factor does not duplicate the proof at trial, but simply permits the jury to consider the number of persons killed and weigh that fact in determining the penalty.

2. That, in committing the offense(s) charged in the indictment, the defendant caused serious physical and emotional injury, including maiming, disfigurement, and permanent disability, to numerous individuals.

This is objected to as duplication but the same analysis made in approving the previous aggravating factor is appropriate. It is not only that some persons were maimed, disfigured and injured. The number of such persons warrants consideration by the jury in the selection process.

3. That the defendant committed, caused, and aided and abetted acts of burglary, robbery, and theft to finance and otherwise facilitate the commission of the capital offense(s) charged in the indictment.

Again, the defendants assert that there must be convictions of such crimes to warrant their consideration. As previously noted, the court will require, by its instructions, that the jury find beyond a reasonable doubt that all of the essential elements of these crimes have been proved and that the motivation for them was to finance and facilitate the crimes of conviction.

■ 4. Victim impact evidence concerning the effect of the defendant's offense(s) on the victims and the victims' families, as evidenced by oral testimony and victim impact statements that identify the victims of the offense(s) and the extent and scope of injury and loss suffered by the victims and the victims' families.

This is the most problematical of all of the aggravating factors and may present the greatest difficulty in determining the nature and scope of the "information" to be considered. Congress expressly provided for victim impact consideration in the Death Penalty Statute but it did not put any limits on what can be considered. § 3593(a). That is a matter for the court's discretion and must be determined with consideration for the constitutional limitation that the jury must not be influenced by passion or prejudice. *Payne v. Tennessee,* 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991). However, because victim impact evidence is relevant only to demonstrate the specific harm caused by a particular crime, *id.,* it seems clear that the victims' testimony must reflect the harm caused by the criminal conduct, rather than the impact of the trial proceedings. This point supports the court's ruling that Rule 615 applies to exclude from the trial proceedings those persons who may testify as victims giving evidence to support this factor at the penalty hearing.

Upon the foregoing, it is

ORDERED that with the exception of the deletions necessary to avoid invalid duplication in the aggravating factors, the defendants' motions are denied.