**UNITED STATES of America,**
**Plaintiff,**

v.

**Eddie S. RODRIGUEZ–BERRIOS,**
**Mario J. Hernandez, Jose L.**
**Roman, Defendants.**

**No. CR. 04–081(PG).**

United States District Court,
D. Puerto Rico.

Feb. 17, 2005.

Edwin O. Vazquez–Berrios, United States Attorney's Office, Torre Chardon, San Juan, PR, Joseph C. Laws, Federal Public Defender's Office, Hato Rey, PR, for USA, Plaintiff.

Lydia Lizarribar–Buxo, Lizarribar Masini Law Office, San Juan, PR, PHV John R. Martin, Martin Brother PC, Atlanta, GA, Joseph C. Laws, Federal Public Defender's Office, Hato Rey, PR, PHV David Arthur Ruhnke, Ruhnke & Barrett Law Office, Montclair, NJ, Carlos A. Vazquez–Alvarez, Federal Public Defender's Office, Maria T. Arsuaga, Federal Public Defender's Office, Hector E. Guzman–Silva, Federal Public Defender's Office, Hato Rey, PR, Raymond Rivera–Esteves, Juan Hernandez Rivera & Assoc., San Juan, PR, William D. Matthewman, Seiden, Alder & Matthewman, Boca Raton, FL, for Defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court is co-defendant Eddie S. Rodriguez–Berrios' motion for further disclosure of government witness statements prior to the DOJ death penalty authorization proceeding (Docket No. 106), which co-defendants Jose L. Roman and Mario J. Hernandez, have joined. (Docket Nos. 109 and 113) Upon review of the motions, the government's opposition (Docket No. 114), the applicable law, and the record of the case, for the reasons set forth hereunder, co-defendants' motions are **DENIED**.

## I. BACKGROUND

On April 14, 2004, co-defendants were charged by way of superseding indictment with a carjacking in which the victim was

sexually abused, abducted, and ultimately slain. (Docket No. 25) Her body was never found. The government has certified this case as eligible for the death penalty in compliance with the Local Rules (Docket No. 27), and is now engaged in the process of authorizing the death penalty. This "authorization process" is conducted in accordance with internal Department of Justice (DOJ) policies, pursuant to which defendants are to be accorded a reasonable opportunity to present mitigating evidence to the DOJ as to why a death penalty prosecution should not be authorized. *See* U.S. Attorney's Manual "Death Penalty Protocol" at § 9–10.000 et seq., June 2001 revision (the "Protocol").

Defendants now move for the production of prosecution witness statements arguing that these are necessary in order to reasonably prepare for the authorization proceeding as provided by the DOJ guidelines. Defendants further submit that such disclosure is contemplated by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as crucial to an effective defense. (Docket No. 106)

The government opposes the disclosure of witness statements at this overearly juncture construing the request an attempt to circumvent the non-disclosure mandate of the Jencks Act, 18 U.S.C. § 3500(a). (Docket No. 114) Moreover, while asserting its compliance with its *Brady* obligations (*id.*), the government has nonetheless submitted under seal the grand jury transcripts for the Court's *in camera* review. (Docket No. 127)

In addition, the government contends that the Protocol creates no enforceable rights, and that defendants have already received a fair amount of disclosure which is more than adequate for an effective presentation before the DOJ. (Docket No. 114) [1]

## II. DISCUSSION

 The Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657, 668–69, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), which held that a criminal defendant has a due process right to inspect prior statements of government witnesses for impeachment purposes, was subsequently clarified and codified by Congress through the enactment of the Jencks Act. 18 U.S.C. § 3500(a) ("no statement . . . by a Government witness . . . shall be the subject of subpena, discovery or inspection until said witness has testified on direct examination in the trial of the case.").

Therefore, "[s]tatements of a government witness . . . which cannot be produced under the terms of [the Act] cannot be produced at all." *Palermo v. U.S.*, 360 U.S. 343, 351, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959)(internal citations omitted). Accordingly, Fed.R.Crim.P. 16(a)(2) bars discovery of "statements made by government witnesses or prospective government witness, except as provided in 18 U.S.C. § 3500."

Defendants have provided no authority for the proposition that the clear mandates of the Jencks Act are to be modified merely because the instant case is an eligible death penalty case. Neither their unsub-

---

**1.** The government also submits that disclosure of witnesses' names and addresses may subject them to danger. (Docket No. 114 at 2) It appears, however, that defendants' disclosure request is limited to witness statements, from which identifying information may be redacted. Although pursuant to 18 U.S.C. § 3432 the witness list need not be furnished if the court determines that providing the list may jeopardize the life or safety of any person, the government has not provided any specific corroborated evidence to that effect, and the Court declines to make such a ruling at this time. *See U.S. v. Luc Levasseur*, 826 F.2d 158, 159 (1st Cir.1987).

stantiated claim that the statements may contain *Brady* material, nor their reliance on internal DOJ policies alter this Court's conclusion that defendants are not entitled to government witness' statements at this precipitant posture.

■ The government has attested to its compliance with its *Brady* obligations. (Docket No. 114 at 9) "In the absence of clear evidence to the contrary, courts presume that [United States Attorneys] have properly discharged their official duties." *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926). Moreover, the government submitted all witness' transcripts to the Court for *in camera* inspection (Docket No. 127), and out of an overabundance of caution, following a deliberate assessment of the same, the Court found no *Brady* material.[2]

■ Although the government has a duty to disclose all material which tends to exculpate defendants (*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)), or impeach government witnesses (*Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)), as to the timing of *Brady–Giglio* disclosures, "the test is whether defendant's counsel was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case" at trial. *See U.S. v. Villarman–Oviedo*, 325 F.3d 1, 13 (1st Cir.2003) (citation omitted); *cf. United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ("Generally, the need for evidence to impeach a witness is insufficient to require its production in advance of trial."). Trial being many months away, there is no genuine reason for this Court to compel the premature disclosure of *Jencks* material.

While defendants surely prefer to access *Jencks* material as early as possible, such disclosure is for purposes of facilitating a fair trial, and not for preparing mitigation arguments for internal DOJ procedures. The government may accordingly exercise its statutory prerogative to withhold *Jencks* material until trial. *See* 18 U.S.C. § 3500(a).

■ Furthermore, defendants' caterwauling to the contrary, the Protocol merely outlines internal DOJ policies which create no enforceable rights. *See* "Protocol," *supra* at § 1–1.100; *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir.1990), *cert. denied*, 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990) ("the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights") (citations omitted); *U.S. v. Torres Gomez*, 62 F.Supp.2d 402, 406 (D.P.R., 1999) (Perez–Gimenez, J.) (determining that accused neither obtains nor possesses any rights at the DOJ's Death Penalty Committee hearing); *accord U.S. v. Ng*, 699 F.2d 63, 71 (2nd Cir.1983) ("to hold the policy legally enforceable would be to invite the Attorney General to scrap it, which would hardly be in the public interest.")(collecting cases); *United States v. Loften*, 518 F.Supp. 839, 856 (S.D.N.Y. 1981), *aff'd*, 819 F.2d 1130 (2d Cir.1987) ("[i]nternal Government policies do not create rights in private citizens. The United States Attorney's Manual itself specifically states that it is not intended to, does not, and may not be relied upon to, create any rights whatever in any party."); *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir.2000); *Nichols v. Reno*, 931 F.Supp. 748, 752 (D.Colo.1996), *aff'd*, 124 F.3d 1376, 1378 (10th Cir.1997); *United*

---

**2.** Having concluded its *in camera* inspection of the sealed transcripts, the Court now makes the same available for the govern- ment's retrieval, as per government request, with the Clerk of Court. *See* Docket No. 127.

*States v. Feliciano,* 998 F.Supp. 166, 169 (D.Conn.1998); *United States v. McVeigh,* 944 F.Supp. 1478, 1483 (D.Colo.1996) ("[t]he Protocol [does] not create any individual right or entitlement"); *United States v. Boyd,* 931 F.Supp. 968, 973 (D.R.I.1996); *United States v. Roman,* 931 F.Supp. 960, 964 (D.R.I.1996) (the Protocol "does not create substantive or procedural rights"); *Walker v. Reno,* 925 F.Supp. 124, 129–31 (N.D.N.Y.1995).

It is also notable that defendants have already received voluminous disclosure more than adequate to reasonably prepare an effective presentation as to why a death penalty prosecution should not be authorized; to wit, 119 recorded statements, 1,141 pages of documentary evidence, including written statements, interviews, and investigation reports. (Docket No. 114 at 11)

### III. CONCLUSION

In light of the foregoing, defendants' motions for further disclosure of government witness statements (Docket Nos. 106, 109 and 113), are **DENIED** at this premature stage.

**IT IS SO ORDERED.**